ST. JAMES ROMAN CATHOLIC CHURCH SOCIETY OF JAMESTOWN, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 54446.)

Fourth Department, December 17, 1975

*Louis J. Lefkowitz, Attorney-General (Dennis Hurley* and *Ruth Kessler Toch* of counsel), for appellant.

*Kevin Kennedy* for respondent.

SIMONS, J. Claimant is the owner of 30 acres of real estate located in Chautauqua County and known as Holy Sepulchre Cemetery. On September 17, 1969 the State appropriated two parcels of it for highway purposes; Parcel 40, consisting of 11.074± acres of undeveloped land taken for the roadbed of a new arterial highway and Parcel 46, consisting of 0.035± acres of developed cemetery land and which included the cemetery entrance on West Oak Hill Road. West Oak Hill Road runs at an angle to the new highway and part of claimant's frontage taken by Parcel 46 was required to grade and elevate West Oak Hill Road so that it passed over the new arterial highway. The issue raised upon this appeal is whether the damages resulting from the partial taking of the developed cemetery parcel must be valued by the income method formulated by the Court of Appeals in *St. Agnes Cemetery v State of New York* (3 NY2d 37). The Court of

Claims held that it did not. It awarded claimant a total of $43,420, plus interest, for all damages to the developed and undeveloped land, measured by the market data and replacement method.

Claimant first acquired the property for a parish cemetery in 1932. Before appropriation, it consisted of a tract of 12.942 acres developed as gravesites and an adjacent parcel of 17.901 acres, platted but undeveloped and unimproved, except for the installation of a roadway. The developed area was attractively landscaped and served by dirt roadways and there was an ornamental entrance of stone pillars and metal fencing on West Oak Hill Road. A drainage system consisting of piping and catch basins had been installed and a water system consisting of a well and distribution piping had been developed. Two cinder-block structures built for storage purposes and located on claimant's property were unaffected by the taking.

Claimant has periodically added to its holdings. The most recent purchase in 1965, four years before the appropriation, consisted of the purchase of 18½ acres of land for the sum of $4,000 (this purchase includes the undeveloped land taken by Parcel 40).

Since 1932, upwards of 3,200 gravesites have been sold. As a result of the appropriation, 11.074± acres of undeveloped land were taken and 3.087± acres of undeveloped land were landlocked. The remaining 3.740 acres of low undeveloped land were adjacent to the developed cemetery area. Although this land is useable, its value has been impaired by the taking because of the necessity of hauling fill to regrade it, whereas prior to the taking claimant had planned to accomplish this by bulldozing a hill on the undeveloped land area which has now been appropriated.

The taking of Parcel 46 resulted in a loss of 0.035 acres of developed land at the front of the cemetery, including the entrance structures, for reconstruction of West Oak Hill Road. The State elevated this road about 14 feet above grade and sloped the embankment onto land retained by claimant. The grading destroyed the water well and some catch basins and drainage pipes; it eliminated 141 gravesites and required that one body be removed from the area. Additionally, this grading made the entrance to the cemetery less attractive and the entrance road now becomes slippery from the ice in the winter months.

The trial court found that the land had a value of $1,200 per acre and awarded direct damages of $13,300 for the undeveloped land taken in Parcel 40, consequential damages of $3,400 for the landlocked undeveloped parcel and $1,500 consequential damages to the usable undeveloped land because of the necessity for filling it. It awarded $9,700 for replacement of the gate and entrance structures, $1,700 for the cost to cure the destroyed water well and $150 for reinterment of the displaced body. These findings are not contested by the State on this appeal.

The trial court found that the land in the developed area of the cemetery had a value of $1,200 per acre and the land improvements had a value of $7,000, for a total value for the developed land of $8,200. The parties agree that the court made a mathematical error in its computation of direct damages for the taking of 0.035+ acres of developed land in Parcel 46 and that the award should be $287 rather than $2,870.

The trial court also found consequential damages to the unsold 9.024 acres of developed land remaining after appropriation. Claimant's appraiser testified that this developed land suffered a consequential loss of 25% of value. The court accepted the testimony that there was consequential damage to the land and improvements in the developed portion of the cemetery and found such damage to be $1,200 per acre or a total of $10,800.

It is this item of consequential damage which the State challenges. It claims that the court improperly used a substitution or replacement method of valuation rather than the income method approved in *St. Agnes Cemetery v State of New York* (3 NY2d 37, *supra*).

The income method of valuing property having a highest and best use for cemetery purposes considers the property as an inventory of fungible gravesites, the supply of which diminishes over a period of years as the land is used and the inventory is exhausted by sales. The value of the gravesites is computed by finding the net annual sales after deducting the cost of improvements and projecting this sum over the life of the cemetery. The result is capitalized and then discounted, much as an annuity, to give it a present value reflecting the fact that the judgment against the State awards claimant dollars in hand in exchange for dollars expected from sales anticipated in the future (cf., also, 4 Nichols, Eminent Domain

[3d ed], § 12.32, subd [4], par [a], cl [i]; Ann., 42 ALR3d 1314, Condemnation-Cemetery Lands).

In the case of a partial taking, the capitalized present worth of the cemetery is measured by this formula before and after taking to determine claimant's damages *(Diocese of Buffalo v State of New York,* 24 NY2d 320). The theory is that partial appropriation of cemetery land merely removes the number of graves available for sale at some future time, shortening the cemetery's economic life.

Applying this formula to both the developed and undeveloped land, the State's appraiser found 22,012 available lots or gravesites with a net income of $91.07 from each lot,* sales at a rate of 100 lots per year and a supply of gravesites in the cemetery which would not be exhausted for 220 years. After the taking there remained an inventory of gravesites available for sale for a period of 61.5 years. Thus, claimant lost the profits to be earned between year 61.5 and year 220 by the taking. After capitalizing the annual net income and determining its present worth, the State's appraiser found the total damage from the taking was $300. Since the acreage in Parcels 40 and 46 obviously were worth more than $300, the State's appraiser rejected this valuation, explaining that the damages were distorted because those dollars received for the period after 61.5 years and up to 220 years had very little present value. Accordingly, he evaluated the undeveloped parcel separately (as did claimant's appraiser and the court) finding that it had a highest and best use for residential purposes. He computed direct damages of $10,600 and he added $10,800 for specific items of consequential damage (replacement of the gates, lost burial rights, landscaping and a new well) to arrive at total damages of $21,400. As noted, the court accepted claimant's market data and replacement cost methods and found total damages of $43,420.

The issue then is whether the formulation of damages set forth by the State's appraiser (since it is the only evidence applying the *St. Agnes Cemetery* rule) must be accepted, or whether the court properly relied upon the substitution theory of valuation used by claimant's appraiser in finding damages.

---

* Claimant contends that the *St. Agnes Cemetery* formula applies only to undeveloped land (cf. *Cementerio Buxeda v People of Puerto Rico,* 196 F2d 177), but that if it in fact is the only acceptable method for appraising developed cemetery land, the value of the improvements to the lots in the developed areas should be included in the computation, not subtracted from it.

Without doubt, a cemetery is a specialty property as specialties are defined for eminent domain proceedings. The general rule is that if there is no recognizable market for property, the normally appropriate fair market value approach is unworkable; the property is a specialty and an award of damages may be based on intrinsic value, i.e., the cost of replacement of the land and improvements (see *Keator v State of New York,* 23 NY2d 337; *Albany Country Club v State of New York,* 19 AD2d 199, affd 13 NY2d 1085; 4 Nichols, Eminent Domain [3d ed], § 12.32, subd [3], par [d]). While recognizing that cemetery property has a restricted use and is not readily marketable, the difficulty apprehended by the court in the *St. Agnes Cemetery* case was that additional suitable land is not always available to replace that lost and the substitution method of valuation often results in unreliable and unfair damage awards in cases of partial taking *(St. Agnes Cemetery v State of New York, supra,* p 46; see, generally, 4 Nichols, Eminent Domain [3d ed], § 12.32, subd [4], par [a]). For example, in that case the claimant's land was divided by the Thruway and additional adjacent land was not available to replace that taken. Therefore, the income method was held to be the appropriate method to value an integrated but unused portion of a cemetery in which there have been no interments and no sales of graves. In doing so, however, the court referred to illustrative cases in which the income technique was not used and the opinion was careful to distinguish situations involving cemeteries with low rates of sales, in which the projected supply of gravesites extends over many years (see *St. Agnes Cemetery v State of New York, supra,* p 43, citing *Laureldale Cemetery Co. v Reading Co.,* 303 Pa 315). That is precisely the reason the formula produces unsatisfactory results in this case. Claimant has a great many available gravesites which, at the present rate of sales, will not be used up for many years. In a later case *(Buffalo Burial Park Assn. v State of New York,* 24 NY2d 320, 328–329), the court was confronted directly with such a problem as it related to undeveloped land and it held that the value of land should be determined on the basis of a highest and best use for other than cemetery purposes. In this case, claimant's land is developed, the large inventory and the slow rate of sale remains, and it cannot change the highest and best use of the developed land as suggested in the *Buffalo Burial Park Assn.* case. Nevertheless, the income method manifestly produces an unrealistic valuation when applied to claimant's land because

the damages computed under this method are considerably less than the cost of reproducing or replacing the property.

Since claimant's property is a specialty, claimant should be allowed, as a minimum, damages based on the approved method of valuation for specialty properties, the reproduction cost. Such a rule is recognized in the Uniform Eminent Domain Code (§ 1004, subd [b]): "(b) The fair market value of property owned by a public entity or other person organized and operated upon a nonprofit basis is deemed to be not less than the reasonable cost of functional replacement if the following conditions exist: (1) the property is devoted to and is needed by the owner in order to continue in good faith its actual use to perform a public function, or to render nonprofit educational, religious, charitable or eleemosynary services; and (2) the facilities or services are available to the general public." (See 4 Nichols, Eminent Domain [3d ed], § 12.32, subd [5].)

This rule, as applied to nonprofit cemeteries, recognizes that such property should be treated as a specialty at least to establish a minimum value, but also recognizes that in some cases valuation by other techniques may result in a higher valuation of the property. That was the practical result of the decision in *St. Agnes Cemetery v State of New York (supra, p 37).*

However, while the trial court properly used the substitution method of appraisal in this case, it erred in determining that the consequential damages for the developed parcel were $1,200 per acre.

The accepted measure of damages in a partial taking case is the difference between the value of the whole before the taking, less the value of the remainder after the taking (see *Diocese of Buffalo v State of New York,* 24 NY2d 320, 323, *supra).* Thus, it is necessary to determine the value of the 9.024 acres of developed land remaining after the taking. The only evidence of the diminution in value is the opinion by claimant's appraiser that the value of the property remaining was reduced by 25% generally. He cited damage resulting from the loss of the seclusion and quiet that previously marked the cemetery, from loss of an aesthetically attractive entrance and the increased hazards of entering and leaving the cemetery after the taking. While these factors may be compensable (cf. *Mt. Hope Cemetery Assn. v State of New York,* 11 AD2d 303, 312–313, affd 10 NY2d 752; *Dennison v*

*State of New York,* 22 NY2d 409), the reduction in value was applicable only to the land value and not to land value and improvements. The highest and best use of the parcel after the taking was for cemetery purposes and the improvements to the developed parcel were undamaged and suitable for the use of the remaining property after taking. Therefore, there were no consequential damages to the development costs and they should not be fractionally reduced.

There was also evidence of the loss of some shrubbery and 141 gravesites on the remaining property after the State graded the entrance on West Oak Hill Road.

Insofar as the grading resulted in the loss of developed gravesites, the cost of those developments should be compensated. The trial court made no finding on the exact number of gravesites lost and we accept claimant's evidence that there were 141 such sites. Since there were 778 sites in an acre, this loss represented the loss of $7,000 worth of improvements for 18% of an acre, or $1,200. The consequential damage to the land on which the gravesites were located is included in the earlier computations.

In summary, the damages (rounded) are as follows:

BEFORE VALUE

| | | |
|---|---|---|
| Developed and unsold area—9.059 acres at $8,200 per acre ($1,200 land + $7,000 improvements) | $74,400 | |
| Undeveloped area—17.091 acres at $1,200 per acre | 21,500 | |
| Entrance structure and gates | 9,700 | |
| Total Before Value | | $105,600 |

AFTER VALUE

DEVELOPED AREA—value of improvements—

| | |
|---|---|
| 9.024 acres at $7,000 per acre development costs— | $63,100 |
| less 141 gravesite improvements lost | − 1,300 |
| | $61,800 |

Plus

| | |
|---|---|
| Value of land—$1,200 per acre for land, reduced 25% for consequential damages = $900 × 9.024 acres | 8,100 |
| | $69,900 |

UNDEVELOPED AREA

| | |
|---|---|
| 3.087 acres landlocked | 100 |
| 3.740 acres at $800 | 2,900 |
| | $3,000 |

|  |  |
|---|---|
| Total After Value | $72,900 |
| Total Damages | $ 32,700 |

The damages are computed as follows:

DIRECT DAMAGES

|  |  |  |
|---|---|---|
| 11.074 acres of undeveloped land | $13,300 | |
| 0.035 acres of developed land | 287 | |
| Entrance structure | 9,700 | |
|  |  | $ 23,300 |

CONSEQUENTIAL DAMAGES

|  |  |  |
|---|---|---|
| 3.087 acres undeveloped but land-locked—damage $1,100 per acre | $ 3,400 | |
| 9.024 acres of unsold developed land, damaged 25% × $1,200 per acre (land only) $300 | 2,700 | |
| 3.740 acres undeveloped lowland damaged $400 per acre | 1,500 | |
| New water well | 1,700 | |
| Removal one body | 150 | |
|  | 9,400 | |
| Total Damages | | $ 32,700 |

The judgment should therefore be modified to reduce the award to $32,700.

MARSH, P.J., MAHONEY, GOLDMAN and DEL VECCHIO, JJ., concur.

Judgment unanimously modified, on the law and facts, in accordance with opinion by SIMONS, J., and, as modified, affirmed, without costs.