Jones, J.
(dissenting). I must dissent from the decision of the majority. I would reverse the order of the Appellate Division and reinstate the judgment of the Court of Claims.
The sole issue on this appeal is the extent of the right of a cemetery to consequential damages to the remaining portion of property which has been developed for cemetery purposes caused by the direct taking of another portion of its property. Both courts below have determined that the rule announced in St Agnes Cemetery v State of New York (3 NY2d 37) is not applicable in this instance, and the State’s application for leave to appeal from that determination was denied (38 NY2d 711). Accordingly, that issue is not now before us. Nor is there any dispute as to the award of damages for the direct taking of either developed or undeveloped property.
The Court of Claims fixed the before-taking value of the 9.024 acres of remaining developed land at $8,200 per acre, consisting of $1,200 per acre for land value and $7,000 per acre for land improvements. These improvements were a network of dirt roadways, a drainage system of piping and catch basins, a water system including a well and distribution piping, together with attractive landscaping throughout the property—altogether the full improvements required to develop the raw land for sale and use as burial plots. Claimant’s appraiser testified that as the result of the direct taking this developed land suffered a consequential loss of 25%—which would have been $2,050 per acre on the basis of the before-taking value fixed by the Court of Claims (i.e.,- $8,200 X 25% = $2,050). The Court of Claims accepted the principle of consequential damage to land and improvements but adjusted the factor of such damage downward to $1,200 per acre (just over 14.6%), and accordingly made an award for consequential damages of $10,800 (9.024 X $1,200 = $10,828.80). I observe that neither claimant’s appraiser nor the Court of Claims calculated the consequential damages by a comparison of before-taking and after-taking values, the familiar formula. *976 Rather their assessment of the damages was predicated on the application of a consequential damage factor to the before-taking value.
The Appellate Division, on the other hand, proceeded on the basis that "The accepted measure of damages in a partial taking case is the difference between the value of the whole before the taking, less the value of the remainder after the taking.” (St. James R. C. Church v State of New York, 50 AD2d 193, 199.) Applying such approach the appellate court held that "Without doubt, a cemetery is a specialty property as specialties are defined for eminent domain proceedings” (p 198). Treating the land and the land improvements separately and differently, the court accepted the opinion of claimant’s appraiser as to the reduction factor, i.e., 25%, and applied that factor to the land value component—thus land valued at $1,200 per acre would be worth 25% or $300 less per acre. For the 9.024 acres this amounted to $2,707.20.
Turning then to the "land improvements” aspect of the claim, the Appellate Division in effect held that valuation on the nonland component of a specialty is normally computed on a cost-of-reproduction basis having nothing to do with market value, and the cost of reproduction before and after taking would obviously be the same. On this basis the court concluded that there would be no consequential damages with respect to the land improvements. Therefore the award for consequential damages was reduced to consequential damages to the land alone, albeit at a higher percentage (25%) than that fixed by the Court of Claims (14.6%).
From a mechanical point of view this result may be said to follow; from a practical economic perspective such a methodology, however, fails to provide just compensation for loss sustained in consequence of the direct taking. In this instance the appraisers for both the State and the claimant agreed that the remaining developed land had been damaged. In my view when considering property values in the present case, it is unrealistic wholly to compartmentalize land and improvement components and to employ different methods of determining consequential damages. To hold that there were consequential damages to the land but not to its integrally related development is inconsistent; the reduction in value was to the property as a unit. Here the land was just as much a "specialty” as were the roadways and the water and drainage systems. It *977 was on the basis of the improvements that both courts below found, as indeed both appraisers agreed, that the highest and best use of the developed land was for cemetery purposes. Where there were no improvements, the highest and best use was found to be for residential purposes. The loss in value attached just as much to the improvements on the cemetery land as it did to the underlying land; the two are functionally and economically indistinguishable. It makes no sense to recognize a diminution in value of the raw land while at the same time denying a comparable effect as to the integrally related improvements which determined highest and best use of the land.
Beyond the particular circumstances we confront in this case, I cannot accept in principle the implicit proposition that because the accepted method of determining the compensable value of a specialty when there is a direct taking is cost of reproduction, the same methodology must automatically be applied on a before and after basis where the issue is consequential damages—always and inevitably to result in a determination that no consequential damages have been sustained. I cannot agree with an absolutism which proclaims that the appropriation of contiguous and closely related property can never work consequential detriment to a specialty simply because the cost of reproduction will never have changed. In my opinion the cost-of-reproduction approach, while suited to determine damages on a direct taking, is inappropriate without more when the issue is consequential damages. On my analysis, the cost-of-reproduction methodology may properly be employed to fix the before-taking valuation. Consequential damages should then be determined in cases such as the present, as did the Court of Claims here, by the application to the entire pretaking value of a particular value reduction factor to be determined on the basis of the expert testimony before the court. Indeed this is precisely what our court most recently approved in City of Yonkers v State of New York (40 NY2d 408). In that case the controversy was over the consequential damages sustained by a public high school building of classic architectural design with its associated campus where portions of its property were appropriated for highway purposes. We upheld an award of consequential damages to the remaining property on the basis of a value reduction factor of 3% applied to the buildings and improvements (p 411). In that case if before and after cost of reproduction alone had been *978 used, there would, of course, necessarily have been no consequential damages.
For these reasons I am compelled to dissent.
Order affirmed, etc.