22 N.Y.2d 409 (1968)
Ira Dennison et al., Respondents,
v.
State of New York, Appellant. (Claim No. 42368.)
Court of Appeals of the State of New York.
Argued April 8, 1968.
Decided July 1, 1968.
Louis J. Lefkowitz, Attorney-General (Julius L. Sackman, Ruth Kessler Toch and Martin H. Schulman of counsel), for appellant.
Edwin L. Marion, Jr. for respondents.
Judges BURKE and JASEN concur with Judge KEATING; Chief Judge FULD concurs in a separate opinion; Judge BERGAN dissents and votes to reverse in an opinion in which Judges SCILEPPI and BREITEL concur.
*410 KEATING, J.
Like most programs undertaken in the name of Twentieth Century progress, the massive public highway construction launched in recent years has produced its share of problems and inconveniences. Of particular concern has been the damage done to the quiet beauty of many once remote and inaccessible areas, as well as the intrusion of the seemingly endless *411 line of asphalt and concrete into the enclaves which many people have sought as surcease from the hustle and bustle of modern day life.
The home of Ira and Dorothy Dennison located in a remote wooded area in Lake George, New York, was unfortunately in the path of one such highway, the Luzerne Road-Lake George Interchange. The area in which the Dennisons' colonial frame house was located, as described in the opinion of the Court of Claims, consisted of generally high and beautifully wooded and landscaped land. The west area of the property sloped downward sharply to the south and west and was covered with a natural stand of trees. The entire eastern section of the property was surrounded by many tall pine, maple, birch, oak and fruit trees. There were no telephone or electric poles as all services were underground. A stream which ran into Lake George formed one border of the property. The landscaping included exotic shrubs and trees. Large shade trees bordered on the lawns. A pine grove at the south end of the property protected the residence from the elements. A raspberry and asparagus garden and dwarf apple trees were part of the landscaped area. In sum, as the Court of Claims Judge concluded, the property "was entirely secluded, quiet and peaceful". (48 Misc 2d 778, 780.)
The aftermath of the condemnation of a portion of the property and the construction of the highway is vividly described in the opinion of the Court of Claims: "As a result of the appropriation, a new highway has been constructed which crosses Old Mill Brook at a point westerly of claimants' residence and continues across the westerly part of the claimants' premises at a distance of about 200 ± feet from said residence. In place of the beautiful view of forest and mountain, which claimants could see from their westerly windows and living areas on the west side of their residence, has been substituted the new highway supported by an embankment approximately 27 feet above grade level at its crossing of Old Mill Brook and averaging approximately 20 feet in elevation above the westerly lawns of claimants' property. All of the sylvan beauty afforded by the forest pre-existing the highway and the privacy and quiet it provided are gone for the State necessarily removed the trees in the course of constructing the new highway. The complete *412 privacy and quiet the claimants enjoyed has been taken from them because the new highway presents a stream of automobile traffic with its attendant noise, lights and odors" (supra, pp. 782-783).
In awarding damages for the partial taking of the Dennisons' property, the Court of Claims took into consideration "the loss of privacy and seclusion, the loss of view, the traffic noise, lights and odors all as factors causing consequential damage to the remaining property". The Appellate Division (Third Department) unanimously affirmed. We granted leave to appeal.
The State argues that the courts below were in error in considering noise as a factor in making an award for consequential damages and urges that the order be reversed and the case remanded to the Court of Claims for a new trial at which the court should make an award without considering the injury to the value of the claimants' property caused by the noise of passing traffic.
The State concedes that it is well settled in this State that, where there is a partial taking, consequential damages which ensue upon the taking are to be considered in determining the award and that, among other things, damages which arise from the use of the parcel taken are entitled to consideration (see, e.g., South Buffalo Ry. Co. v. Kirkover, 176 N.Y. 301).
The State argues, however, that not all elements of consequential damages resulting from the use to be made of the condemned property are to be considered. To be excluded from consideration are elements of damage which are not peculiar to the owner of the remaining property but are suffered by the public generally. Thus, the State points to the fact that, where there has been no partial taking of property, an owner whose property adjoins a public highway would not be entitled to damages resulting from the depreciation of his property due to the noise of cars and trucks passing on the highway. (See, e.g., Mathewson v. New York State Thruway Auth., 11 A D 2d 782 [2d Dept.], affd. 9 N Y 2d 788; Bennett v. Long Is. R.R. Co., 181 N.Y. 431; Nunnally v. United States, 239 F.2d 521 [4th Cir.].) Therefore, a property owner should not be entitled to compensation for such damages merely because of the fortuitous circumstance that a portion of his property was needed to construct the highway.
*413 While this argument is not without some merit, we believe that it overlooks the method by which the courts below awarded damages and the practical difficulties involved in adopting the rule it suggests.
The courts below did not make a separate award for damages due to noise but rather merely considered it as one factor in determining the decrease in value to the remaining property. As we view the case, it would have been practically impossible for the court to separate the noise element from the other elements which, it is conceded, were properly considered  the loss of privacy, seclusion and view. Any reduction which would be made on remand would be purely arbitrary and at best speculative. How could it be determined which portion of the diminution in value was due to loss of privacy and view and which portion was due to noise? The State does not suggest an answer but argues steadfastly that such a determination must be made.
This does not answer the question and is clearly contrary to cases in this and other jurisdictions which have recognized that, where there has been a partial taking of property of the kind present here, the noise element may be considerd as one of several factors in determining consequential damages (South Buffalo Ry. Co. v. Kirkover, supra; Shano v. Fifth Ave. & H St. Bridge Co., 189 Pa. 245; Crawford v. Central Nebraska Public Power & Irrigation Dist., 154 Neb. 832).
In conclusion, we would note that we are not unmindful of the State's argument that there are certain inconveniences which property owners must endure without monetary compensation if we are to have the advantages of modern means of transportation (see, e.g., Bopp v. State of New York, 19 N Y 2d 368, 373). In the instant case and cases of like kind, however, we believe that the practical difficulties attendant upon accepting the State's theory of evaluating damages outweighs any benefit likely to be derived from applying it.
The order of the Appellate Division should be affirmed, with costs.
Chief Judge FULD (concurring).
I agree with Judge KEATING and would simply add that we are not, contrary to intimations in the dissenting opinion, "accept[ing] future traffic noise as an element of consequential damage" (p. 414) in "quite unrestricted form" (p. 415).
*414 The essential factor which distinguishes the case before us from the general run of cases  and, perhaps, relates it to those involving hospitals and cemeteries (see, e.g., Mount Hope Cemetery Assn. v. State of New York, 11 A D 2d 303, 313, affd. 10 N Y 2d 752)  is the quietude, the tranquility and the privacy of the property, qualities which the claimant prized and desired and which undoubtedly are items that would be taken into account by an owner and a prospective purchaser in fixing the property's market value.
BERGAN, J. (dissenting).
It is, unfortunately, not made altogether clear in the majority opinion whether the reason that leads the court to accept future traffic noise as an element of consequential damage is the difficulty in segregating this element from other well-established items; or whether, as a matter of policy, future traffic noise should be the subject of consequential damages, even if it stood alone. The two questions are rather different.
At one point the opinion observes that it would have been "practically impossible for the court to separate the noise element from the other elements" and concludes that any reduction on remand "would be purely arbitrary and at best speculative".
Although the opinion regards the State's answer (or non-answer) to this question of segregation unacceptable, it also treats the State's answer as being contrary to South Buffalo Ry. Co. v. Kirkover (176 N.Y. 301) and to two cases in other States. In its final paragraph the opinion again reverts to the "practical difficulties" in accepting the State's theory as outweighing any benefit likely to be derived from accepting it.
Thus the stress in the rationale of the majority seems to fall on the difficulty in segregating damages. But the burden is on a claimant to show that the consequential damage asserted by him flows from the taking; and it is strange doctrine, indeed, to say that a man is entitled to an item of damage not recoverable if it stood alone because he is unable to segregate that item from other items of damage properly recoverable.
Nor is segregation necessarily practically impossible in this case. No attempt was made by the claimants to separate damage from future traffic noise from other items; and the impossibility of the segregation is thus one which has merely been *415 assumed on appeal. Moreover, expert witnesses and trial courts are accustomed to separating elements of damage that are proper from those elements not proper. This covers a wide range of subjects and it does not seem unreasonable to require a claimant having the burden of proof to make the segregation, or if not made, to fail in his claim for undifferentiated damage.
This leads to the broader implication of the present decision, beyond the impossibility of segregation which was decisive at the Appellate Division (28 A D 2d 28, 29) and which seems largely controlling in this court. That other and broader question beyond segregation is whether future traffic noise is a legitimate part of consequential damage at all.
Traffic noise on highways and streets is a universal condition of modern life. The nearer one gets to the beneficial public conveniences of rapidly moving transportation, the more pervasive the noise.
Millions of residents of New York are exposed to it along the Long Island Expressway, the East River Drive, the West Side Highway, the Route 17 Quickway and the Thruway, to suggest some notable examples. Its effects are not limited to people whose property adjoins the highway. It can be heard with more or less intensity for remarkable distances. That it has, indeed, a consequence on market value wherever it is heard is undoubtedly true. But there are some unpleasant consequences of modern life which are not the proper subject of damages in a law court.
The very universality of traffic noise presents a quite different problem from the items customarily allowed as consequential damages in condemnation. If a tree which shades a man's home is cut down or his access to a highway is destroyed or his view from his property affected detrimentally, these are things directly and specially tied into the land.
But traffic noise is heard by everyone within the range of sound; and since it is a consequence that one takes by choosing to live in a country which builds modern highways, with resulting economic and transportation advantages to everyone, damage ought not, as a matter of policy, be allowed in general and unlimited scale for this kind of consequence.
The court seems by implication to sanction future noise damage in quite unrestricted form. If it does this, it ought to reconsider *416 the cases such as Bennett v. Long Is. R.R. Co. (181 N.Y. 431) and Mathewson v. New York State Thruway Auth. (11 A D 2d 782, affd. 9 N Y 2d 788) which it cites with approval and in which damage for noise was disallowed in the absence of a taking.
It is not easy to support the justice of a distinction between a man from whom a small slice of land is taken for a road who may get damages for future traffic noise and a man who is just as near the road and suffers every bit as much damage but from whom no land is taken.
The nature of traffic noise destroys the essential element of particular unity of interrelationships between taking and consequence which until now has been a characteristic of this type of damage.
The idyllic beauty of claimants' house, wooded and landscaped property, its exotic shrubs, trees and garden will not be affected more adversely by future traffic noise than many hundreds of people owning property near the Northway from whom there has been no physical taking.
The danger of unrestricted acceptance of this enlargement of public liability is suggested by the fact no requirement is imposed, as it ought to be if liability is to be broadened, that the party seeking damages show himself injured in a special way, not shared by the general public, e.g., a hospital, a school, a church.
Nor does South Buffalo Ry. Co. v. Kirkover (176 N.Y. 301, supra), cited by the majority opinion as the New York case supporting this present decision, give it much sustenance. The opinion grouped noise from railroad operations with smoke, dust and cinders as among items for which evidence tending "to legally establish the amount * * * is competent" (p. 307).
The court made no analysis of the effect of noise as damage and it was grouped without distinction or differentiation with a number of other items. The court made a somewhat unusual approach to the problem in considering the principle "unembarrassed by legal decisions" (p. 306).
South Buffalo Railway is not, therefore, a case which should control the significant present-day policy problem of future traffic noise. In Mount Hope Cemetery Assn. v. State of New York (11 A D 2d 303, affd. 10 N Y 2d 752) the item for damage for noise, as specially affecting a cemetery, was not contested *417 by the State as such and the opinion of the court gave no consideration to it. The case is not, therefore, in point.
Care must be taken, too, in accepting uncritically some of the out-of-State decisions. The Pennsylvania decisions, for example, rest upon a grouping of damage elements which are left generally to a jury under rules peculiar to that State (see, e.g., Shano v. Fifth Ave. & H St. Bridge Co., 189 Pa. 245).
And in some other States, the rule which this court ought to adopt as at least a minimal limitation on its decision is that, where noise is an element of damage, it must be shown that its effect on the claimant is not common to other owners (see, e.g., Mississippi State Highway Comm. v. Colonial Inn, 246 Miss. 422; People v. Symons, 54 Cal. 2d 855).
The order should be reversed and the claim remitted to the Court of Claims to require claimants to establish their consequential damages independently of the element of future traffic noise.
Order affirmed.