BARHAM, Justice
(dissenting).
I dissent from the majority’s evaluation of the facts which leads it to the conclusion that there has been a diminution in the value of the subject properties. More than that, I dissent from the legal concepts which permeate the opinion without any artthoritative expression or even a philosophical or legal inquiry.
The majority distinguishes Reymond v. State, Department of Highways, 255 La. 425, 231 So.2d 375, from the cases at hand. Reymond was in the nature of an inverse expropriation proceeding for the structural damage to plaintiff’s home resulting from pile driving operations. There was no taking. The other damages claimed in that case were suffered by all in the general neighborhood, and we held that they were not recoverable as special damages. In the cases at hand there were takings — in Garrick a 5i4-foot strip of land fronting on the street, and in Rivers a 4j^-foot strip of land fronting on the same street. The expropriation caused the houses on the Garrick and Rivers properties to be nearer the street, 51/2 feet and 4^4 feet respectively. If the taking has diminished the market value of the remaining pieces of property, then in each case the difference between the former market value and the present market value is the severance damage which must be granted to the owner of the property.
It is certainly possible that a taking which positions houses nearer to a street or highway may cause a diminution in mar’ket value and require the assessment of *353 severance damages. In these cases, however, there is no proof in the records that the remainders were damaged because of the taking of the narrow strips from the fronts of the properties. This expropriation was not for construction of a new street, but rather for the widening and improvement of an existing street. Both of the properties involved are rental, and it is uncontroverted that there has been no diminution in rental values because of the taking. The houses are cheap, rough-finished, much repaired, shotgun-type constructions of some age. The properties were in a depressed neighborhood before the taking. The best expert opinion is that there has been no diminution in value of the remainder. More than that, from numerous pictures taken both before and after the expropriation, the houses as well as the neighborhood appear to be actually improved because of the improved widened street. My evaluation of the evidence brings me to a conclusion that neither of the properties is diminished in value because of the expropriation, and I would dissent for this reason alone.
However, more disturbing than the result which is obtained in these two cases are the anomalous overtones in reasoning which portend unprecedented and perhaps catastrophic results in the future. The majority has casually brushed off one of the most complex problems arising out of the taking and damaging of private property for public works. Worsham, Problems Peculiar to a Partial Taking in Condemnation, 1959 Institute on Eminent Domain, p. 61; Sackman, Air Rights — A Developing Prospect, 1969 Institute on Eminent Domain, p. 1 at p. 26; Dennison v. New York, 22 N.Y.2d 409, 293 N.Y.S.2d 68, 239 N.E.2d 708; 1 Orgel on Valuation Under Eminent Domain, Chapter 4 (2d ed. 1953); 2 and 2A Nichols on Eminent Domain, Chapter 6 6rd ed. 1970); 4A Nichols, op. cit., Chapter 14. If thought has been given to the future consequences under the holding on these serious issues, it is certainly left unexpressed in the opinion.
The majority has made a distinction in the damages that will be paid when there is no taking, and the damages to be paid when there is the slightest partial taking, even though in fact the damages suffered in both instances may be the same in kind and in degree. No attempt has been made to justify the difference in the two situations as a matter of law or of public policy. Although the distinction was made by differentiating the present cases and Reymond, public bodies would be unwise to believe that this distinction will survive. A reading of the majority opinion as a whole may well lead one to conclude that every adverse effect suffered by anyone because of public use and construction is compensable. Is there to be recovery for depreciation of value simply because a public body uses abutting prop *355 erty in a disadvantageous manner when there is no recovery for the same depreciation brought about by the disadvantageous use of abutting property by a private person?
In the absence of police regulation or contractual or legal restrictions, uses of adjoining land by the individual are regulated only by Civil Code Article 669 defining a nuisance. Are public bodies to be discriminated against? Is a public use which would not constitute a nuisance, but which may be a depreciating factor to a few while an appreciating factor for a great many more, to be condemned and penalized when exercised by a public body while immunity is granted to the private person?
For the first .time in our jurisprudence, the majority here has summarily included future traffic noises as an item of severance damages. The overwhelming majority view in this country is that this is a non-compensable damage. Sackman, supra. The dissent in Dennison v. New York, supra, which represents the majority view elsewhere — and probably the continuing majority view in New York because of the divisions and concurrences in that opinion — shows the inherent dangers under the contrary view.
“ * * * That other and broader question * * * is whether future traffic noise is a legitimate part of consequential damage at all.
“Traffic noise on highways and streets is a universal condition of modern life. The nearer one gets to the beneficial public conveniences of rapidly moving transportation, the more pervasive the noise.
“ * * * Its effects are not limited to people whose property adjoins the highway. It can be heard with more or less intensity for remarkable distances. That it has, indeed, a consequence on market value wherever it is heard is undoubtedly true. But there are some unpleasant consequences of modern life which are not the proper subject of damages in a law court.
“The very universality of traffic noise presents a quite different problem from the items customarily allowed as consequential damages in condemnation. * * *
“But traffic noise is heard by everyone within the range of sound; and since it is a consequence that one takes by choosing to live in a country which builds modern highways, with resulting economic and transportation .advantages to everyone, damage might not, as a matter of policy, be allowed in general and unlimited scale for this kind of consequence.
“ * * *
“It- is not easy to support the justice of a distinction between a man from whom a small slice of land is taken for a road who may get damages for future traffic noise and a man who is just as near the road *357 and suffers every bit as much damage but from whom no land is taken.
“The nature of traffic noise destroys the essential element of particular unity of interrelationships between taking and consequences which until now has been a characteristic of this type of damage.
“ * * =1=
“The danger of unrestricted acceptance of this enlargement of public liability is suggested by the fact no requirement is imposed, as it ought to be if liability is to be broadened, that the party seeking damages show himself injured in a special way, not shared by the general public, e. g., a hospital, a school, a church.
« * * * ff
Finally, the majority has made an award here which is neither for damage to the remainder by reason of severance nor special damages. Perhaps this error of the majority is brought about by its discovery that “severance damages” is too sophisticated in definition. This error is compounded when the majority fails to note that the damages actually compensated for are general to the entire neighborhood whether there has been a partial taking or not.
The courts are beginning to be faced with a most serious consideration of public policy in a balancing of the individual’s interest and the general public's interest. The problem is so complex as to defy broad generalization of legal principles.
I would not here attempt to answer the numerous legal and public policy questions which this court and other courts must face in balancing public and private interests. I simply warn that the possible future consequences of the underlying unexpressed philosophy of the majority may place the cost of all public improvements for public benefit at such a premium that they will be totally unfeasible. I suggest that severance damages should be (as they have been heretofore) the consequences of diminution in value by reason of a partial taking and not by reason of the use made by the public body of other land than that involved in the partial taking. These latter damages, if compensable, should not exceed the liability of private persons for maintenance of public nuisances. In the concern with ecology, preservation of nature, conservation, and aesthetics, more time, energy, and money should be expended in determining where and how our improvements are to be built than in compensating — granting reparation to — individual landowners in the aftermath of expropriation for damages which are suffered almost universally, varying in degree and not in kind. Levin, Environmental Quality and Public Land Acquisition, 1971 Institute on Planning, Zoning, and Eminent Domain, p. 1SS. We cannot as courts must, in a piecemeal, case-by-case approach do justice to the broad, complex public policy problem. It recommends it *359 self to a concentrated, overall appraisal by the Legislature. Until there is some legislative reevaluation of the problems presented, our courts should carefully, cautiously, and as prudently as possible meet the issues without sweeping aside years of precedent.