Jones, J.
The question before us is whether on the record in this case an award of consequential damages for a partial taking of property which served as a public high school campus may be sustained.
Incident to the widening of Central Park Avenue through the City of Yonkers, on September 12, 1968 the State appropriated in fee and for permanent and temporary easements portions of property owned by the city and located on the northwest corner of the intersection of Central Park Avenue and Tuckahoe Road. Roosevelt High School, a public senior high school facility serving about 1,500 students and staffed by 90 faculty members, is located on the 500,000 square feet of property all of which is used for school purposes. The building, of classic architectural design, was constructed in 1925, enlarged in 1931 and 1961, and includes some 60 classrooms, together with a library, science laboratories, administration offices, girls’ and boys’ gymnasiums with locker facilities, and a kitchen-cafeteria. Prior to the appropriation the school stood back from Tuckahoe Road about 180 feet and was above the road level. Three driveways provided access to the school grounds, two of which approached the front of the building from Tuckahoe Road and connected with a circular driveway at the entrance. The grounds were enclosed by fencing and included paved faculty parking areas on the sides of the building and a combination football field and baseball diamond, a running track and tennis courts at the rear. With protective trees and shrubbery and situated on the knoll *410 above Tuckahoe Road removed from the noise and dust of passing traffic, the high school enjoyed a campus setting, peculiarly advantageous for an urban public education facility.
The land appropriated in fee by the State lay along the two sides of the school property that abutted on Central Park Avenue and Tuckahoe Road. The taking resulted in a 40-foot reduction of setback along Tuckahoe Road on which the high school fronted and in a lesser but significant reduction in sideline setback along Central Park Avenue. In addition to sums representing the value of the fee and of the permanent easements taken, the trial court awarded $43,000 as the cost-to-cure, $12,500 as the value of land improvements taken and $149,760 as consequential damages to the school building. The judgment has been affirmed at the Appellate Division.
On the appeal to our court the State challenges only the award of consequential damages and on two grounds: that it is in part duplicative of the portions of the award which represented cost-to-cure and the value of land improvements, and that it is based solely on an unsupported opinion by claimant’s appraiser witness which was not sufficient to sustain the award.
As to the first challenge: The State called as a witness a civil engineer who testified in detail as to what would be required by way of construction and grading to move, restore or replace certain land improvements which were affected by the taking—a parking lot, backstop, tennis courts, curbs, walks, fencing and evergreen screening. He estimated the cost of this restorative work at $43,000. This figure was adopted in turn by the State’s real estate appraiser who also estimated additional damages for land improvements directly taken at $12,500. This appraiser expressed the opinion that no consequential damages would be sustained by the building as a result of the taking. Claimant’s expert, however, testified that consequential damages would be suffered by the school by reason of the change in nature of the site in consequence of the appropriation, specifically, "that we have lost our quietude, tranquility and privacy, so provided and desired by a public high school facility, we have lost our distance from the roadway, Tuckahoe Road, and now, we don’t have an effective barrier to dust and fumes emanating from the heavily trafficked Tuckahoe Road. We have lost our campus-like setting.” He fixed the amount of such consequential damages at 3% of *411 the value of the building and improvements; by reason of the stated results of the appropriation "the subject building is 3 per cent less valuable for high school purposes than it was prior to the taking.” On cross-examination he stated that there were no cost-to-cure expenses included in his 3% appraisal. Although he recognized the loss of or need to move certain athletic facilities as a factor to be considered in fixing consequential damages, he included none of the facilities identified in the State’s engineer’s cost-of-cure figure in his 3% estimate. It is clear that there was no duplication in the trial court’s acceptance and award to claimant of the sum fixed by the State’s witnesses as the cost-of-cure and value of improvements directly taken—$43,000 plus $12,500—and its award of consequential damages to compensate for the loss sustained by the school building itself by virtue of the fee taking of land which lay between it and the public highways—$149,760, computed at 3% of the value of the high school building.*
As to the State’s claim that the record lacks any support for the trial court’s award other than the unfounded opinion of claimant’s appraiser: In addition to the testimony of that real estate expert, who had been personally familiar with the school campus for more than 15 years and knew the area intimately (his office was across the street) and who was therefore peculiarly qualified to assess the effect of the taking of the frontal and side areas of the property, the school principal testified as to specific detrimental consequences to the high school. These included required relocation of the baseball field, loss of ability to erect a music auditorium on one side of the building, loss of the corner entrance to the site and diminution of the classic beauty of the school. Additionally, it was undisputed that the grade of the incline at the front of the building to the road was markedly increased and that the setback was significantly diminished. This evidence amply supported the trial court’s factual finding, affirmed by the Appellate Division, that substantial consequential injury had been suffered by the school building by virtue of the taking.
*412 The State argues that severance injuries, unless they adversely affect the functional use of the building, may not be regarded as support for an opinion with respect to consequential damages. Stated otherwise, its contention is that no award may be made in this instance for loss of the campus quality which existed at the site before the appropriation or for the reduced insulation from highway noise, dust and fumes which resulted from the taking.
Much attention has been devoted by counsel for both the claimant and the State to our decision in Dennison v State of New York (22 NY2d 409), occasioned at least in part by the incidental reference in the opinion of the Court of Claims to the fact that the appropriation "made traffic noise more audible”. Preliminarily we note that the noise factor was in no way considered by the Court of Claims as a discrete element in the computation of damages. To the extent that Dennison stands for the proposition that where construction of an express highway intrudes on the quiet beauty of a remote and secluded sylvan setting, the abrasion of traffic noise can be recognized as a principal factor in the computation of consequential damages, the holding is irrelevant for present purposes (Kauffman v State of New York, 43 AD2d 1004, affd 36 NY2d 745). To the lesser extent that Dennison is a reflection of the broad principle that the owner of land retained after appropriation is entitled to be recompensed for all the substantial elements of consequential damage to his property, including inter alia in appropriate cases injury associated with the impact of traffic noise, it is apposite. But as was stated by Chief Judge Fuld in Dennison (p 414): "The essential factor which distinguishes the case before us from the general run of cases—and, perhaps, relates it to those involving hospitals and cemeteries (see, e.g., Mount Hope Cemetery Assn. v. State of New York, 11 A D 2d 303, 313, affd. 10 N Y 2d 752)—is the quietude, the tranquility and the privacy of the property, qualities which the claimant prized and desired and which undoubtedly are items that would be taken into account by an owner and a prospective purchaser in fixing the property’s market value.” So it is in the present instance. The high school had a direct, identifiable, functional interest in quietude, a circumstance which would not exist in every or even most urban properties and which existed here in consequence of the particular use to which the buildings and improvements were being put.
*413 Loss of enhancement attributable to location and esthetic qualities of a claimant’s property was recognized as a consequential damage in Purchase Hills Realty Assoc. v State of New York (35 AD2d 78, affd 30 NY2d 615). So it is in this instance. The spacious campus setting and atmosphere of Roosevelt High School, factors advantageous to the use of the property for educational purposes, were substantially adversely affected. That this injury had provable economic significance was established by the testimony of a real estate expert, singularly acquainted with this particular property and qualified by long experience to express opinion as to factors affecting the market value of real estate in general. In these circumstances the Court of Claims was warranted in crediting his expert opinion with respect to the conversion of this injury into economic dollar impact, expressed as a percentage diminution of total value.
For the reasons stated the order of the Appellate Division should be affirmed.

 The claimant’s expert had testified that in his opinion the value of the building and land improvements was $3,102,500. Three per cent of that figure would have been $93,075. The State’s appraiser, however, fixed the value of the building alone at $4,992,000. The Court of Claims accepted the latter figure, and, applying the 3% factor, awarded consequential damages of $149,760 in explicit addition to the cost-to-cure and land improvement damages of $43,000 and $12,500, respectively.