RUDRA TAMM, TRUSTEE *v.* J. WILLIAM BURNS,
COMMISSIONER OF TRANSPORTATION ET AL.
(14355)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BERDON, JS.

Argued February 18—decision released June 2, 1992

*Kenneth N. Tedford,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Cornelius F. Tuohy,* assistant attorney general, for the appellant (named defendant).

*Rudra Tamm,* the appellee (plaintiff).

Shea, J. The sole issue in this appeal is whether the plaintiff's allegations, that the state's operation of a truck inspection and weigh station on its property, which is adjacent to his, has caused additional noise, unsightliness and air pollution on his property, suffi-

ciently state a claim of inverse condemnation under article first, § 11 of the Connecticut constitution, which provides: "The property of no person shall be taken for public use, without just compensation therefor."[1] The plaintiff, Rudra Tamm, brought this action for damages and injunctive relief against J. William Burns, who was commissioner of the state department of transportation when the action was commenced, and William A. O'Neill, who was governor of Connecticut at that time. The first three counts of the complaint alleged inverse condemnation, malicious erection of a structure and private nuisance, respectively, against Burns. The fourth count stated a misrepresentation claim against O'Neill. The trial court granted the defendants' motion to dismiss the action on the ground that the court lacked subject matter jurisdiction because of the doctrine of sovereign immunity.[2] The plaintiff appealed the dismissal of the first and fourth counts to the Appellate Court, which upheld the dismissal of the fourth count against O'Neill, but reversed with respect to the first count and remanded the case for

---

[1] The plaintiff also relies upon the "takings" clause of the fifth amendment to the United States constitution. The fifth amendment, however, serves as a limitation only on the powers of the United States government and affords no ground for relief against the state of Connecticut. *Fallbrook Irrigation District* v. *Bradley,* 164 U.S. 112, 17 S. Ct. 56, 41 L. Ed. 369 (1896); *Barron* v. *Baltimore,* 32 U.S. 243, 8 L. Ed. 672 (1833). "The Fourteenth Amendment to the United States Constitution provides for the protection of the federal courts to individuals whose property is threatened with condemnation by a state without compensation. Such a deprivation would lack the process of law." 3 P. Nichols, Eminent Domain (3d Ed.) § 8.01[2]; *Chicago Burlington & Quincy R.R. Co.* v. *Chicago,* 166 U.S. 226, 17 S. Ct. 581, 41 L. Ed. 979 (1897); 2 J. Nowak, R. Rotunda and J. Young, Constitutional Law § 14.2. The plaintiff has not advanced a due process claim under the fourteenth amendment to the federal constitution.

[2] Practice Book § 143 provides in part: "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process. This motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record."

further proceedings on that inverse condemnation claim. *Tamm* v. *Burns,* 25 Conn. App. 468, 594 A.2d 1043 (1991). We granted certification, limited to the following issue: "Did the Appellate Court properly conclude that the plaintiff had adequately alleged facts amounting to a substantial claim of a violation of his constitutional right against taking of his property without just compensation, so as to avoid the bar of sovereign immunity?" *Tamm* v. *Burns,* 220 Conn. 914, 597 A.2d 340 (1991). We answer that question in the negative and, accordingly, reverse the judgment of the Appellate Court.

"We have long recognized the common-law principle that the state cannot be sued without its consent. . . . We have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Therefore, we have dealt with such suits as if they were solely against the state and have referred to the state as the defendant." (Citations omitted.) *Sentner* v. *Board of Trustees,* 184 Conn. 339, 342, 439 A.2d 1033 (1981). Nevertheless, "[i]n a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts." Id., 343; *Horton* v. *Meskill,* 172 Conn. 615, 624, 376 A.2d 359 (1977). "[T]he doctrine of sovereign immunity is not available to the state as a defense to claims for just compensation arising under article first, § 11, of the Connecticut constitution." *Textron, Inc.* v. *Wood,* 167 Conn. 334, 342, 355 A.2d 307 (1974). "When possession has been taken from the owner, he is constitutionally entitled to any damages which he may have suffered . . . ." *Trumbull* v. *Ehrsam,* 148 Conn. 47, 55-56, 166 A.2d 844 (1961); see also *Simmons* v. *Parizek,* 158 Conn. 304, 307, 259 A.2d 642 (1969);

*Anselmo* v. *Cox,* 135 Conn. 78, 81–82, 60 A.2d 767, cert. denied, 335 U.S. 859, 69 S. Ct. 132, 93 L. Ed. 405 (1948).

The word "taken" in article first, § 11 of our state constitution means "the exclusion of the owner from his private use and possession, and the assumption of the use and possession for the public purpose by the authority exercising the right of eminent domain." *Bishop* v. *New Haven,* 82 Conn. 51, 58, 72 A. 646 (1909). Although property may be "taken" without any actual appropriation or physical intrusion; *Laurel, Inc.* v. *State,* 169 Conn. 195, 201, 362 A.2d 1383 (1975); *Stock* v. *Cox,* 125 Conn. 405, 419, 6 A.2d 346 (1939); "there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose . . . as where the economic utilization of the land is, for all practical purposes, destroyed." (Citations omitted.) *Horak* v. *State,* 171 Conn. 257, 261, 368 A.2d 155 (1976). A constitutional taking occurs when there is a "substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed." *Textron, Inc.* v. *Wood,* supra, 346. To survive a motion to dismiss on the ground of sovereign immunity, a complaint "must allege sufficient facts to support a finding of a taking of land in a constitutional sense." *Horak* v. *State,* supra.

The complaint in this case alleges that the commissioner's construction of a truck weigh station on the south side of Interstate 95 adjacent to the plaintiff's property in Greenwich, which included the felling of over one thousand trees located on state property between the plaintiff's parcel and the interstate, "resulted in the following damages to plaintiff's property. a. Removed the natural and pre-existing screening between plaintiff's property and the noise, sight, fumes and toxic emissions from I95. b. Altered the pre-

existing drainage near plaintiff's property. c. Located a dangerous toxic substance holding pond immediately adjacent to plaintiff's property. d. Located a vehicle weighing station with additional noise, unsightliness and toxic substances immediately adjacent to plaintiff's property." The complaint further alleges that the commissioner's actions "diminished the value of plaintiff's property" and "made part of the property of plaintiff unable to be utilized for any reasonable and proper purpose." We hold that the facts alleged do not demonstrate an interference with the plaintiff's property that "in a substantial degree abridged or destroyed" the value of the property or the plaintiff's use and enjoyment of it.[3] *Textron, Inc.* v. *Wood,* supra.

In essence, the complaint alleges that the commissioner's removal of trees from state property has exposed the plaintiff's property to the noise, unsightliness, and fumes, as well as toxic emissions from traffic on Interstate 95, and that his operation of a weigh station has resulted in additional noise, unsightliness, and fumes, as well as the presence of a holding pond for toxic substances on property adjacent to the plaintiff's property.[4] Although such allegations could conceivably support a claim of nuisance or some other sort of tortious interference by the state with the plaintiff's use of his property, they do not amount to a "taking" of the plaintiff's property in the constitutional sense.

---

[3] Although the commissioner submitted affidavits with his motion to dismiss in accordance with Practice Book § 143, disputing some of the plaintiff's factual allegations, no evidentiary hearing was conducted in the trial court to resolve the disputed issues of fact. Consequently, in reaching our conclusion, we have viewed the factual allegations of the complaint in the light most favorable to the plaintiff. See *Bradley's Appeal from Probate,* 19 Conn. App. 456, 466–67, 563 A.2d 1358 (1989).

[4] The plaintiff also alleges that drainage *near* his property has been altered by the construction of the weigh station. Without a claim that the commissioner's alteration of nearby drainage somehow adversely affected the plaintiff's property, this allegation fails to assert any interference whatsoever with the plaintiff's property rights.

It can scarcely be doubted that an owner of property situated near a truck weigh station on an interstate highway endures an eyesore and a level of noise and air pollution not experienced by property owners who do not live beside a highway. Aesthetic privations such as these, even when accompanied by increased motor vehicle pollution, do not, however, interfere so substantially with a property owner's rights as to constitute a practical confiscation of those rights. Compare *Richards* v. *Washington Terminal Co.,* 233 U.S. 546, 34 S. Ct. 654, 58 L. Ed. 1088 (1914) (landowner entitled to compensation for injuries peculiar to his property that were so severe as to render it objectionable as a habitation).

The claim that the plaintiff's property has been "taken" because it has diminished in value as a result of the commissioner's actions must also fail because "[an] owner is not entitled to compensation for the diminution in value of his property resulting from . . . a valid exercise of the police power."[5] *DeMello* v. *Plainville,* 170 Conn. 675, 679, 368 A.2d 71 (1976); see also *Penn Central Transportation Co.* v. *City of New York,* 438 U.S. 104, 133, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978). The plaintiff cites two New York cases for the proposition that diminution in value may provide a basis for compensation under factual circumstances such as these. *Yonkers* v. *New York,* 40 N.Y.2d 408, 353 N.E.2d 829, 386 N.Y.S.2d 865 (1976); *Dennison* v. *New York,* 22 N.Y.2d 409, 239 N.E.2d 708, 293 N.Y.S.2d 68 (1968). These cases, however, do not stand for that proposition. They merely set forth the rule that, when a governmental authority condemns a portion of a property owner's parcel, any diminution in the value of the

---

[5] The plaintiff has not challenged the commissioner's authority to construct the weigh station or the legality of the procedures followed in its construction.

remaining parcel is taken into account by the court when determining the measure of just compensation for the partial taking.

Connecticut law recognizes the same rule that "[w]hen only a part of a tract of land is taken for the public use, 'just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking." *D'Addario* v. *Commissioner of Transportation,* 172 Conn. 182, 184, 374 A.2d 163 (1976). Injuries of the sort complained of by the plaintiff in this case may, therefore, be compensated as consequential damages when they result from the state's condemnation of a portion of private property, but they may not be so compensated, absent such a partial condemnation, because they do not, themselves, constitute a taking, the necessary constitutional predicate for the award of just compensation. "This restriction of a right of recovery to situations where land is taken inevitably produces inequalities and inequities; thus the construction of a new highway on a portion of a tract of land of one person entitles him to recover damages suffered by reason of the depreciation in value of his remaining premises, whereas one owning land which abuts upon the new highway but no part of which is taken can recover nothing . . . ." *Andrews* v. *Cox,* 129 Conn. 475, 477–78, 29 A.2d 587 (1942).

In support of his position that he is entitled to just compensation, the plaintiff has cited certain California and Illinois cases; *Harding* v. *Department of Transportation,* 159 Cal. App. 3d 359, 205 Cal. Rptr. 561 (1984); *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Darke,* 148 Ill. 226, 35 N.E. 750 (1893); in which governmental action short of a "taking" resulted in successful claims for just compensation. The constitutions of those states provide for just compensation when property is taken

*or damaged.*[6] "Some constitutions . . . provide a recovery for the 'taking or damage' and consequently are liberally construed to include compensation for injury akin to that charged by the [plaintiff]. 2 Nichols, Eminent Domain (3d Ed.) § 6.4432[2]; *New Haven Steam Saw Mill Co.* v. *New Haven,* 72 Conn 276, 285, 44 A. 233 [1899]. Our constitution, however, contains no such language . . . ." *Benson* v. *Housing Authority,* 145 Conn. 196, 202, 140 A.2d 320 (1958). In view of this fundamental distinction, we do not consider case law construing "damage" provisions in other states' constitutions as persuasive authority for interpreting the "taking" clause of the Connecticut constitution.

In holding that the facts alleged do not support a claim of inverse condemnation under article first, § 11 of the Connecticut constitution, we emphasize that our decision is based on the *nature* of the plaintiff's allegations and not on his claim that only a portion of his property has been rendered useless by the commissioner's installation of the weigh station. As a matter of law, allegations that the state has exposed the plaintiff's property to unpleasant sights, sounds and vehicle pollutants by its lawful construction of a weigh station do not support the claim of an interference sufficiently grave to be deemed a "taking" in the constitutional sense of even part of that property. Having concluded that the facts alleged in this case do not allege the requisite level of governmental intrusion with private property rights, we need not decide at this juncture whether private property may be considered

[6] Article first, § 15 of the Illinois constitution provides in part: "Private property shall not be taken or damaged for public use without just compensation as provided by law. . . ."

Article first, § 19 of the California constitution provides in part: "Private property may be taken or damaged for public use only when just compensation . . . has first been paid to . . . the owner."

"taken" when the factual allegations do support a claim of substantial interference, but with respect to only a portion of the property.[7]

Although the factual allegations in this case do not state a claim for inverse condemnation under the state constitution and, therefore, cannot avoid the bar of sovereign immunity, the legislature has established an alternate forum for claims against the state that are barred by sovereign immunity. As we have previously noted, the plaintiff's allegations might be appropriate for an action of private nuisance against an adjoining landower. Because sovereign immunity bars such an action against this defendant, the plaintiff has resorted to a claim of an unconstitutional taking in order to obtain redress. We have rejected this claim because it does not conform to our state precedent for such a taking. Before embarking on a consideration of whether we should take a more expansive view of the taking clause in article first, § 11 of our state constitution, we must be sure that no other remedy is available to compensate the plaintiff for the losses alleged.

In accordance with article eleventh, § 4 of the Connecticut constitution,[8] the General Assembly has established the office of the claims commissioner, granting to the claims commissioner the power to waive the state's sovereign immunity when he "deems it just and equitable" and to authorize suit "on any claim which,

_____

[7] The United States Supreme Court has stated: " 'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole . . . ." *Penn Central Transportation Co.* v. *City of New York,* 438 U.S. 104, 130–31, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978).

[8] Article eleventh, § 4 of the Connecticut constitution provides: "Claims against the state shall be resolved in such manner as may be provided by law."

in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." General Statutes § 4-160 (a). The claims commissioner is also authorized to "approve immediate payment of just claims not exceeding [$7500]"; General Statutes § 4-158; or, for claims greater than $7500, to make recommendations to the general assembly for the payment or rejection of such claims, which recommendations the general assembly may "accept or alter" or "reject." General Statutes § 4-159. Since we have concluded that the plaintiff's claim does not fit the precedential mold for a constitutional taking claim, he must exhaust the claims commission remedy, which is available for nonconstitutional claims, before proceeding further with his claim of a violation of his constitutional rights. *Doe* v. *Heintz,* 204 Conn. 17, 37, 526 A.2d 1318 (1987); *McNish* v. *American Brass Co..* 139 Conn. 44, 53, 89 A.2d 566 (1952), cert. denied, 344 U.S. 913, 73 S. Ct. 336, 97 L. Ed. 704 (1953).

Moreover, the legislature has provided a specific action for declaratory and equitable relief against unreasonable pollution whereby "any person . . . may maintain an action . . . for declaratory and equitable relief against the state . . . for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction." General Statutes § 22a-16. An individual, such as the plaintiff, who complains of tortious interference by the state, that is not so serious as to constitute a constitutional taking of his private property, is not, therefore, without recourse to other avenues of relief.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's dismissal of this action.

In this opinion PETERS, C. J., CALLAHAN and COVELLO, Js., concurred.

BERDON, J., dissenting. In this case, the plaintiff clearly alleged a taking of his property under article first, § 11 of the Connecticut constitution, which provides: "The property of no person shall be taken for public use, without just compensation therefor."

The majority concedes that because the trial court did not hold an evidentiary hearing on the motion to dismiss, even though the state submitted affidavits with its motion, we must view "the factual allegations of the complaint in the light most favorable to the plaintiff. See *Bradley's Appeal from Probate*, 19 Conn. App. 456, 466–67, 563 A.2d 1358 (1989)." In the present case, the Appellate Court pointed out that the plaintiff alleged in the first count of the complaint, the following: "[T]he plaintiff owns real estate on the south side of Interstate 95 in Greenwich adjacent to state owned property. At this location, which was formerly the site of a toll station, the state began constructing a truck inspection and weigh station. As part of this construction, the state cut down a substantial number of trees on its land and commenced other activities necessary to the construction of the weigh station. The plaintiff alleged that these activities caused the following damage to his property: (1) exposure to increased noise, unsightliness, fumes, and toxic emissions from I-95; (2) the alteration of preexisting drainage; (3) the placement of a dangerous toxic substance holding pond immediately adjacent to his property and (4) increased noise, unsightliness and toxic emissions caused by the operation of the completed inspection and weigh station." *Tamm* v. *Burns*, 25 Conn. App. 468, 469–70, 594 A.2d 1043 (1991). In addition, the plaintiff alleged the effects of these allegations, in that "[s]aid actions of the defendant [state] have made part of the property of [the] plaintiff unable to be utilized for any reasonable and proper purpose" and that "[s]aid actions of defendant have resulted in a taking of [the] plaintiff's

property." Surely, construed in the light most favorable to the plaintiff, these allegations allege a taking—that is, the activities of the state on adjoining land made a portion of the property of the plaintiff unusable for any purpose.

In *Horak* v. *State,* 171 Conn. 257, 261, 368 A.2d 155 (1976), we held the following: "The word 'taken' as used in the fifth amendment to the constitution of the United States and article first, § 11, of the Connecticut constitution means generally the exclusion of the owner from his private use and possession, and the assumption of the use and possession for the public purpose by the authority exercising the right of eminent domain. *Bishop* v. *New Haven,* 82 Conn. 51, 58, 72 A. 646 [1909]. *Carl Roessler, Inc.* v. *Ives,* 156 Conn. 131, 140, 239 A.2d 538 [1968]. Although a 'taking' may be complete without an actual, physical appropriation of property as discussed in such cases as *Laurel, Inc.* v. *State,* [169 Conn. 195, 205, 362 A.2d 1383 (1975)], and *Stock* v. *Cox,* 125 Conn. 405, 419, 6 A.2d 346 [1939], there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose; *Laurel, Inc.* v. *State,* supra; *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 153 A.2d 822 [1959]; as where the economic utilization of the land is, for all practical purposes, destroyed. See *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 197 A.2d 770 [1964]." (Internal quotation marks omitted.) Accordingly, the plaintiff need only assert predicate allegations that could lead to the conclusion that a portion of his property, as a result of the state's activities on its adjoining property, "cannot be utilized for any reasonable and proper purpose." *Horak* v. *State,* supra.

In the present case, the plaintiff makes these allegations in his complaint. He alleges that as a result of the state activities on the adjoining property *"fumes and toxic emissions* . . . have made part of the prop-

erty of [the] plaintiff *unable to be utilized for any reasonable and proper purpose."* (Emphasis added.) Surely, these allegations are sufficient to support a constitutional taking.[1] Whether they can be proven is not an issue before this court and must be left to the trier of fact.

In *Richards* v. *Washington Terminal Co.,* 233 U.S. 546, 557–58, 34 S. Ct. 654, 58 L. Ed. 1088 (1914), the United States Supreme Court concluded that, despite Congress' grant of immunity from actions for private nuisances, a landowner was entitled to compensation for injuries peculiar to his property that were caused by the gases and smoke emanating from a fanning system located in a railroad tunnel that were so severe as to render the property less habitable than it otherwise would have been. To hold otherwise, the court reasoned, would allow property to be taken for public use without just compensation, in violation of the fifth amendment to the United States constitution. Id. The court stated that "no authority conferred by Congress would justify an invasion of private property to an extent amounting to an entire deprivation of its use and enjoyment, without compensation to the owner; nor could such authority be invoked to justify acts, creating physical discomfort and annoyance to others in the use and enjoyment of their property, *to a less extent than entire deprivation,* if different places from

[1] The majority asserts that before the plaintiff may seek redress of his constitutional claim, he must exhaust his claims commission remedy. Apparently, the majority distinguishes constitutional takings claims that "fit the precedential mold" from novel takings claims. This distinction, however, has no basis in our law and is without merit. First, General Statutes § 4-142 (2) excepts "claims upon which suit otherwise is authorized by law" from the jurisdiction of the claims commissioner. Constitutional takings claims, even atypical ones, are authorized by law. Second, *Doe* v. *Heintz,* 204 Conn. 17, 36–37, 526 A.2d 1318 (1987), upon which the majority relies, is inapposite because the issue in *Doe* was not one of constitutional dimensions, but, rather it involved a dispute over the recovery of attorney fees and costs.

those occupied could be used by the corporation for its purposes, without causing such discomfort and annoyance . . . ." (Emphasis added; internal quotation marks omitted.) Id., 556.

Although the majority demurs on the issue, logic dictates that we hold that the plaintiff need not allege that his *entire* property is rendered useless. Otherwise, for example, a plaintiff who owns only a ten foot strip of land that is rendered useless by the smoke and toxic emissions may recover for a taking, but, if that same ten feet of land is part of a larger tract owned by the plaintiff, he or she may not recover anything.

I agree with the Appellate Court that the allegations are sufficient and the plaintiff should be given his day in court. Accordingly, I respectfully dissent.