[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] AMENDED MEMORANDUM OF DECISION
The Commissioner of Transportation of the State of Connecticut (Commissioner) took by condemnation rights of access, easements and otherwise burdened two parcels of land (takings) known as 20 East Industrial Road and 26 East Industrial Road located in Branford and owned by the defendant Connecticut Shellfish Company (Conn. Shellfish)[1],[2]
assessing damages at $7,060.00. The takings[3] were in connection with the relocation of the southbound access and egress ramp at 56 on Interstate 95 highway (Ramp 56). Conn. Shellfish took this appeal seeking a reassessment of damages.[4]
Conn. Shellfish operates a commercial fresh seafood processing plant in a building located at 26 East Industrial Road employing approximately thirty-five persons. It receives most of the seafood at night which is stored in large walk-in refrigerators.
The takings by the Commissioner can be summarized as follows: (a) with respect to 20 East Industrial Road, a vacant industrial lot, 164 feet of a total of 215 feet of access were taken leaving 51 feet for access to the road; (b) with respect to 26 East Industrial Road, an easement of 2,831 square feet was taken to install and maintain traffic control equipment which easement included vehicular access. The Commissioner reconstructed Ramp 56 so its southbound entrance and exit location is now within 100 feet of Conn. Shellfish's property which Ramp was previously located approximately one-half mile from the subject property.
 I
"The owner of land taken by condemnation is entitled to be paid just compensation. Conn. Const. art. I § 11. If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained of it thereafter. The `fair market value' is the price that a willing buyer would pay a willing seller based on the highest CT Page 1703 and best possible use of the land assuming, of course, that a market exists for such optimum use." (Citations and internal quotation marks omitted.) Minicucci v. Commissioner of Transportation, 211 Conn. 382, 387
(1989).
The Court agrees with Conn. Shellfish that the taking of the access of 164 feet of a total of frontage of 215 feet with respect to 20 East Industrial Road is significant and adversely effects the value of the lot. The Commissioner merely passes this taking off as being insignificant, but it concedes that the "loss of access created an architectural challenge." The Commissioner's appraiser fails to realistically recognize the substantial damages that resulted from this taking of seventy-seven percent of the access to the road for 20 East Industrial Road. The Court finds that 20 East Industrial Road, consisting of 2.4 acres, had a fair market value of $325,000 before the taking and a fair market value of $210,000 after the taking resulting in damages in the amount of $115,000.
The Court also finds that the easement consisting of over 2831 square feet on 26 East Industrial Road for the installation and maintenance of traffic signal, for all practical purposes, amounts to a total taking because it requires vehicular access and under the zoning regulations of Branford that area can not be included in the overall buildable area. The court finds that the reasonable damages per a square foot is $4.30 and Conn. Shellfish is entitled to rounded damages of $12,000 for this taking.
 II
Conn. Shellfish also seeks damages as a result of the relocation of Ramp 56 as it affects its business. Ramp 56 is a high volume interchange off Interstate 95 that serves an established industrial/commercial area of Branford along Leetes Island Road at East Industrial Park Road. In addition, significant truck traffic from I-95 utilizes Ramp 56 to access a major, existing truck stop on East Industrial Road. In other words, all of this traffic, as a result of the relocation of Ramp 56, will now be dumped in front of 26 East Industrial Road.[5]
Justice Bogdanski, writing for a unanimous court, stated the rule as follows: "When only a part of a tract of land is taken for the public use, `just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value CT Page 1704 of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value. The court should consider any and all damages which will foreseeably follow from the proper construction of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. The use to be made of the land taken is to be considered with regard to its effect on the remaining land . . ." (Internal citation and quotation marks omitted). D'Addario v.Commissioner of Transportation, 172 Conn. 182 (1976); see also Tamm v.Burns, 222 Conn. 280, 287 (1992).
The court first finds that the fair market value of 26 East Industrial Road was adversely affected to the extent of 15 percent. The fair market value of the property before the relocation of Ramp 56 was $1,100,000 and after $935,000, resulting in a loss of $165,000.
The damages do not stop there.[6] The Court finds that as a result of the relocation of Ramp 56 which places it one hundred feet from Conn. Shellfish, there is an "increase of trucks and car vehicles idling and traversing in close proximity of the subject site [which] will generate pollutants associated with the internal combustion engines, as well as the increase in suspension of dust particles, etc., from the roadway surface by these vehicles. The specific pollutants associated with these two types of vehicles are: 1) Hydrocarbons (HC), or more accurately designated as Volatile Carbons Organic (VOC); 2) Carbon Monoxide (CO); 3) Nitrous Oxides (NOx); and 4) Total Suspended Particulates (TSP)."[7]
The Court further finds that the pollutant most detrimental to the quality of Conn. Shellfish's product, is TSP.
Dr. Rafael R. Pedraja and Associates' report also describes the negative impact that the relocation of Ramp 56 will have on the products of Conn. Shellfish as follows: "The off and on ramps just steps away from the plant frontage will create, because of significant increased traffic by motor vehicles including heavy vehicles such as trucks and semi-trailers, a potentially unsafe environment. Traffic and resulting vehicle emissions will contribute with toxicants and pollutants to the viciation of air quality on the surroundings of the plant . . . Air movement aided by prevailing winds around the plant can carry the pollutants inside the plant."[8]
Although the Court finds that Conn. Shellfish sustained its burden by a fair preponderance of the evidence that these air pollutants (in particular TSP) will adversely effect the fresh seafood, it is not necessary to reach that level of proof. "[T]he landowner need not CT Page 1705 demonstrate that a more detrimental future use is likely to occur; all possibilities that would affect market value are relevant." (Citation omitted.) Alemany v. Commissioner of Transportation, 215 Conn. 437, 445
(1990). There is good reason for this lesser burden. As the Commissioner conceded at oral argument, this is the only opportunity for Conn. Shellfish to be compensated for its damages. Simply put there is no second bite at the apple.
The Commissioner's defense is simple: No regulatory agency (state or federal) has required any remediation of the air quality in Conn. Shellfish's facility. That, however, ignores the fact that Conn. Shellfish, on its own, wishes to maintain the quality of its products by reducing TSP and other airborne contaminants from entering the facility, a problem resulting from the relocation of Ramp 56.
In order to ensure the air quality, Stahlman Engineering Corp.[9]
(Stahlman) recommended, and the Court finds, that the following is necessary: the installation of a gas fired make-up air unit with associated ductwork and HEPA filters to each refrigerated room and dock be installed to create positive pressure in the rooms to minimize outside air infiltration at a cost of $67,500; the installation of new sealant and weather stripping at the cost of $12,500 in order to prevent airborne contaminants from entering Conn. Shellfish's facility. Stahlman also recommended, and the Court finds it to be necessary, that the finger docks be enclosed at a cost of $85,000. The Court further finds that the engineering costs that will be incurred as the result of this remedial work is $24,750.
 III
In sum, the Court awards damages of $115,000 for the access taking of 20 East Industrial Road, $12,000 for the traffic signal easement, $165,000 for the reduction in the market value of 26 East Industrial Road, and $189,750 for remediation damages with respect to the costs for ensuring the air quality of Conn. Shellfish's facilities; in total damages of $481,750 less the deposit of $7060, in all $474,690 plus interest at the rate of eight percent per annum from May 4, 2000 to the date of judgment.
 IV
The Commissioner argues that Conn. Shellfish is not entitled to reimbursement of the costs for its experts. Clearly, Conn. Shellfish is entitled to the costs of the preparation of its real estate appraisal. General Statutes § 13a-76; Alemany v. Commissioner ofCT Page 1706Transportation, 215 Conn. 437, 449-50 (including footnote 8 at 450). The Court has reviewed the extensive real estate appraisal prepared by Marc P. Nadeau, SRA, the appraiser employed by Conn. Shellfish and concludes that his fee of $4500 is reasonable and it is allowed as part of Conn. Shellfish's taxable costs.[10]
Robert I. Berdon, Judge Trial Referee