SCOTT BOULANGER ET AL. *v.* TOWN OF OLD LYME*

Superior Court, Judicial District of New London
File No. CV-07-4007438-S

* Affirmed. *Boulanger* v. *Old Lyme*, 127 Conn. App. 572, 16 A.3d 739 (2011).

Memorandum filed January 7, 2010

*Vincent F. Sabatini*, for the plaintiffs.

*Michael T. Ryan* and *Clarisse N. Thomas*, for the defendants.

COSGROVE, J. The plaintiffs desire to use their undeveloped lot in the Sound View section of Old Lyme as a parking lot where members of the public could park their cars, for a fee, in the seasonally congested beach

area of Old Lyme. The plaintiffs assert that the Old Lyme zoning regulations do not prohibit privately owned public use parking lots, but that such parking lots are regulated by a town ordinance that allows for parking lots so long as they meet certain requirements relating to the number and demarcation of parking spots and signage indicating who owns and operates the parking lot. If those criteria are met, the plaintiffs argue that they are entitled to a permit under the ordinance allowing them to use their land as a parking lot.

The defendants, the town of Old Lyme and the town's First Selectman, Timothy Griswold, argue that the Old Lyme Zoning Regulations prohibit all privately owned public use parking lots and that the ordinance to which the plaintiffs refer relates only to parking lots that predated the zoning prohibition and exist as nonconforming uses. Because of this prohibition on publically owned parking lots, the defendants argue that the plaintiffs are not entitled to a use permit or to operate a parking lot on their property.

As is clear from this brief precis of the arguments, there is significant disagreement between the parties as to the import of the Zoning Regulations of the Town of Old Lyme and as to the import of an ordinance of the Town of Old Lyme. The Town through its ordinances adopted by the Board of Selectmen and the Regulations adopted by the Zoning Commission have created a somewhat unusual regulatory structure. Ordinarily when one thinks of the regulation of the use of land within a municipality one thinks of a Zoning Commission, a Zoning Board of Appeals and a Zoning Enforcement Officer. Questions of interpretation of the Regulations normally fall to the Zoning Enforcement Officer with an appeal available to the Zoning Board of Appeals. Old Lyme has created by ordinance a different scheme for the regulation of public parking lots. In Old

Lyme the First Selectman is authorized by ordinance to issue permits for parking lots.

The court will briefly review the language of the ordinance and regulations in question. Section 161-10 of the Old Lyme town ordinances, as amended in 1999, provides: "(A) No person or organization shall operate a parking area on private property in the Town of Old Lyme without receiving a permit issued by the First Selectman or his designee. Each permit shall terminate on the 31st day of December of each year, unless earlier terminated under § 161-12 of this article, as amended. The permit shall be available for inspection at all times. *This article regulates existing parking lots and this § 161-10 shall not be construed to authorize the establishment of any new parking area which does not conform to the applicable provisions of the Old Lyme Zoning Regulations.*" (Emphasis added.)

The Old Lyme Zoning Regulations appear to have been first adopted on November 12, 1991, and became effective on January 1, 1992. These regulations have been amended multiple times since that date. Section 6.3 of the Zoning Regulations discusses "Prohibited Uses." Specifically this regulation provides: "6.3 Prohibited uses: It is expressly understood that any use not listed and designated on SCHEDULE A-1 or SCHEDULE B-1 as a permitted use in a district is prohibited in such district. To assist in the interpretation of permitted uses, the following uses, the list of which is not intended to be exhaustive, are specifically prohibited: 6.3.9 No lot, or portion thereof, shall be used as a Public Parking Lot, except for Public Parking Lots under the management, supervision and control of the Town of Old Lyme. (6/1/99)."

The plaintiffs' property on Portland Avenue is located in an R-10 zone. Public Parking lots, as they are defined

in § 9.1 of the Zoning Regulations, are not a permitted use delineated on SCHEDULE A-1 of the Regulations.

## I

## UNDISPUTED FACTS

The plaintiffs, Scott Boulanger, Kathleen Boulanger and Eugene Gallo, own a parcel of land located at 73 Portland Ave., in the Sound View section of Old Lyme, Connecticut. Prior to 2002, the plaintiffs operated the lot as a private parking lot for their own use. In 2002, the plaintiffs filed an application for a Zoning Compliance Permit so that they could operate their lot as a privately owned public parking lot where the general public could park their cars, for a fee, and visit the Sound View area. This permit was denied with the notation that the requested use was "not permitted" per § 6.3.9 of the town zoning regulations. In 2003, the plaintiffs again filed for a Zoning Compliance Permit seeking to use their property as a public parking lot. This permit application was again denied with the notation that the use sought was prohibited by § 6.3.9 of the town zoning regulations. On April 7, 2004, the plaintiffs once more sought a Zoning Compliance Permit for their property; again, it was denied because of the prohibitions found in § 6.3.9 of the town zoning regulations.

On April 7, 2004, the plaintiffs also filed an application for a variance with the Old Lyme Zoning Board of Appeals (Zoning Board) seeking permission from the board to use their lot as a public parking lot and claiming that because of the lot's small size, and the fact that it is surrounded by other parking lots, denying the variance would place an undue hardship on the plaintiffs. On June 8, 2004, the Zoning Board held a regular meeting where it discussed the plaintiffs' proposed variance. At that hearing, the plaintiffs were given the opportunity to discuss why they should be granted a zoning variance that would allow them to operate their property as a

public parking lot. The Zoning Board declined to grant the plaintiffs' requested variance. The plaintiffs did not appeal the 2004 Zoning Board decision to the Superior Court, as was permissible under General Statutes § 8-8.

On September 25, 2006, the plaintiffs' attorney sent Timothy Griswold, the First Selectman of Old Lyme, a letter indicating that the town's repeated refusal to allow the plaintiffs to use their property as a public parking lot violated their constitutional rights. By letter dated November 7, 2006, the plaintiffs, through their attorney, gave notice to the defendant Town of their claim that they had been injured by the denial of their use of their property and that their United States and Connecticut Constitutional Rights had been violated. By letter dated January 25, 2007, the plaintiffs, through their attorney, applied for a parking permit pursuant to § 161-10 of the town ordinances. No permit was issued. On July 26, 2007, the plaintiffs commenced the present action in the New London Superior Court by filing a summons and eight count complaint alleging violations of the plaintiffs' due process rights under 42 U.S.C. § 1983, takings clause violations under the United States Constitution, violations of the plaintiffs' rights under the Connecticut Constitution and violations of the takings clause of the Connecticut Constitution. The plaintiffs also seek a writ of mandamus ordering the town to provide them with a parking lot permit and declaratory relief stating that the plaintiffs have the right to use their property as a public parking lot.

On May 15, 2009, the defendants filed the present motion for summary judgment, arguing that the plaintiffs' entire operative complaint should be summarily decided in their favor because the action was barred by the statute of limitations, as the plaintiffs failed to file the action within three years from the 2004 denial of their permit application or application for a zoning variance. Also, the defendants argue that the plaintiffs'

action is barred by General Statutes §§ 7-101a and 7-465 because the plaintiffs failed to provide notice to the town that they intended to file suit within six months from the alleged injury. Further, the defendants argue that the entire operative complaint should be barred because the plaintiffs have not exhausted their administrative remedies by failing to appeal the Zoning Board decision under § 8-8.

In addition to raising arguments that address the plaintiffs' operative complaint in its entirety, the defendants also argue that each count of the plaintiffs' operative complaint should be summarily decided in their favor individually. With regard to the plaintiffs' first count, an alleged violation of the plaintiffs' substantive due process rights, the defendants argue that they are entitled to summary judgment because there is no dispute of material fact that the plaintiffs do not have a clear entitlement to use their land as a parking lot, and as such, the plaintiffs cannot claim that the defendants' actions in denying them a parking lot permit have denied them of any property right.

The defendants argue that the plaintiffs' second count, a violation of their procedural due process rights, should be denied because the plaintiffs had been afforded a full and fair venue to pursue their rights at the Zoning Board hearing in June, 2004.

The defendants argue that the plaintiffs' third count, a violation of their equal protection rights, should be denied because they were not similarly situated to the other parking lot operators in Old Lyme because they were seeking to open a new parking lot, where as all of the other lots had been in existence before such lots were prohibited by the Old Lyme zoning regulations.

The defendants argue that the plaintiffs' fourth count, a takings claim under the United States Constitution

should be denied because the Fifth Amendment's takings clause does not apply to the defendants because they are not federal entities.

The defendants argue that the plaintiffs' fifth count, a substantive due process claim under article first, §§ 8 and 10, of the Connecticut Constitution should be denied because the plaintiffs have been provided an adequate statutory remedy under § 8-8 for the alleged deprivation of their due process rights. Further, the defendants also argue that the fifth count of the plaintiffs' operative complaint should be denied because even if the plaintiffs were not required to first appeal the Zoning Board's decision, they lack the requisite property interest in operating a parking lot to bring a due process claim.

The defendants argue that the plaintiffs' sixth count, an equal protection claim under the Connecticut Constitution, should be denied because the courts have not recognized a cause of action under article first, §§ 1 and 20, of the Constitution and that even if the court were to recognize such an action, the plaintiffs are not similarly situated to the parking lot operators in Old Lyme whose parking lots preexisted the zoning regulations prohibiting public parking lots.

The defendants argue that the plaintiffs' seventh count, a takings claim under the Connecticut Constitution, should be denied because the plaintiffs may still use their property as they always have: for private parking. As such, they have not been deprived of all practical use of their property, and there has been no taking in the constitutional sense.

The defendants argue that the plaintiffs' eighth count, seeking a writ of mandamus, must fail because the defendants do not have a mandatory duty to provide the plaintiffs with a compliance permit because the plaintiffs do not have a zoning variance that would

allow them to operate a public parking lot. The defendants argue that because the plaintiffs lack a variance, they do not have a clear legal right to a permit. Further, the defendants argue that the plaintiffs have an adequate remedy at law in that they can seek an appeal of their variance denial in Superior Court pursuant to § 8-8.

Finally, the defendants argue that the plaintiffs' ninth count, seeking declaratory relief, is inappropriate because without a zoning variance, they cannot use their property as a parking lot, and such a declaration would be improper.

Additionally, the defendants argue that they cannot be held liable to the plaintiffs because they are shielded by sovereign immunity as codified in General Statutes § 52-557n. The defendants also argue that Timothy Griswold cannot be held liable for his acts or omissions with relation to the plaintiffs' land use dispute because he is entitled to qualified immunity for his actions as First Selectman of Old Lyme.

On June 19, 2009, the plaintiffs filed an objection to the defendants' motion for summary judgment. They argue that their action is not barred by the statute of limitations because the plaintiffs' last permit application was made on January 25, 2007, and they filed their lawsuit on August 14, 2007, well within the three year statute of limitations found in General Statutes § 52-577. Further, the plaintiffs argue that their action is not barred due to failure to give appropriate notice because notice is not required to bring claims under 42 U.S.C. § 1983, and, further, they provided the defendants with notice of their intent to bring suit on November 7, 2006, in compliance with the appropriate statutes.

The plaintiffs argue that their claim is not barred by their failure to pursue all of their administrative remedies because their claim is not a zoning dispute, but rather a claim that their constitutional rights have

been violated by the defendants' refusal to issue them a permit to which the plaintiffs were entitled by town ordinance.

The plaintiffs argue that summary judgment is inappropriate as to their 42 U.S.C. § 1983 substantive due process claims because they have a clear entitlement to use their property as a parking lot because the Old Lyme town ordinance provides that parking lots are a permitted use so long as they met the permit criteria listed in the ordinance, and the plaintiffs have met those requirements.

The plaintiffs argue that summary judgment is inappropriate as to their procedural due process claim under 42 U.S.C. § 1983 because the parking lot permit under the town ordinance is granted or denied at the sole discretion of the first selectman and does not allow for any appeal process from his decision.

The plaintiffs argue that summary judgment is inappropriate as to their equal protection claims under 42 U.S.C. § 1983 because, with regard to the parking permit ordinance, they are similarly situated to other lot owners who are repeatedly granted permits to operate public parking lots. Further, they argue that whether these lots preexisted the zoning prohibition on parking lots is irrelevant because the parking lot permit is not a vested right and must be renewed every year.

The plaintiffs also argue that their federal takings claim should be permitted because Connecticut recognizes that regulations can be seen as takings through inverse condemnation if they are unreasonably confiscatory. The plaintiffs argue that they have produced sufficient evidence to raise material issues of fact with regard to whether the defendants' refusal to allow them to operate their land as a parking lot qualifies as a taking through inverse condemnation.

The plaintiffs argue that their state law constitutional due process violations should not be barred simply because they have not been recognized by the courts in the past. Rather, they argue that constitutional claims such as theirs are taken on a case-by-case basis and that they are entitled to have a trier of fact determine whether their state constitutional rights have been violated.

The plaintiffs argue that they have raised issues of material fact with regard to their claim that they are entitled to a writ of mandamus. Specifically, the plaintiffs argue that they have presented evidence which shows that the plaintiffs have met the conditions for a parking lot permit, the town ordinance does not prohibit parking lots and the first selectman has a duty to issue a parking lot permit if the conditions spelled out in the ordinance are met.

The plaintiffs further argue that their claim for declaratory relief should not be decided summarily because they have presented genuine issues of material fact with regard to whether the regulation scheme developed by the defendants deprived the plaintiffs the opportunity to present their application for a permit and as to whether the regulation scheme is unreasonable and irrational.

Finally, the plaintiffs argue that the defendants are not protected by governmental immunity because immunity under § 52-557n is not available in a 42 U.S.C. § 1983 action and that they have presented issues of material fact that question whether Timothy Griswold knew or should have known that the actions he took in his official capacity would violate the rights of the plaintiffs.

## II

## DISCUSSION

### A

### Arguments Applicable to All Counts of the Plaintiffs' Operative Complaint

The defendants argue that the plaintiffs' operative complaint, as a whole, should be summarily decided in their favor because the plaintiffs failed to bring their action within the statutory period allowed by § 52-577. The court disagrees and finds that the plaintiffs have raised issues of material fact with regard to when the last attempt at obtaining a parking lot permit was made by the plaintiffs and when the defendants last denied the plaintiffs' permit request. Specifically, in support of their objection to summary judgment, the plaintiffs have submitted the affidavit of Kathleen Boulanger wherein she avers that on September 25, 2006, she sent a letter, through her attorney, to Timothy Griswold requesting an opportunity to discuss her multiple applications for a parking lot permit and the town's continued refusal to grant such a permit. She also avers that the town responded to this letter on November 10, 2006. The plaintiffs also supplied a letter dated January 25, 2007, to Timothy Griswold, again asserting that the plaintiffs were entitled to receive a parking lot permit. There is no dispute that the plaintiffs commenced this action on August 14, 2007, well within three years from their September 25, 2006 letter and less than eight months from their January 25, 2007 letter. Whether either of these letters constituted an actionable permit request that was wrongfully denied by the defendants presents an issue of fact that renders summary judgment on statute of limitations grounds inappropriate.

The defendants argue that the plaintiffs' operative complaint should be summarily decided in its entirety

because the plaintiffs did not provide notice to the defendants that they were intending to bring suit within six months from the alleged aggrievement as required by §§ 7-101a and 7-465. As discussed above, the date of the defendants' last actionable conduct affects whether summary judgment is appropriate as to the plaintiffs' operative complaint. The plaintiffs have presented sufficient evidence to raise an issue of fact as to whether they made a permit application on September 25, 2006, or January 25, 2007, that was wrongfully denied by the defendants. They also have submitted evidence that they provided the defendants with notice of an intent to file suit against the defendants on November 7, 2006. If the plaintiffs are correct in their assertion that they were wrongfully denied a permit requested on September 25, 2006, then their notice of intent to file suit on November 7, 2006, would satisfy the notice requirements of §§ 7-101a and 7-465. As such, whether the plaintiffs supplied the defendants with sufficient notice presents material issues of fact which render summary judgment inappropriate.

The defendants' argument that the plaintiffs have failed to exhaust their administrative remedies because they have not appealed the Zoning Board's variance denial to the Superior Court is not persuasive because the plaintiffs' failure to appeal the Zoning Board's decision does not bar the plaintiffs' action as a whole. Specifically, the plaintiffs' various 42 U.S.C. § 1983 claims could not be disposed of based on their failure to pursue administrative remedies because "[e]xhaustion of administrative remedies . . . is not required before bringing a claim pursuant to 42 U.S.C. § 1983." *Paul* v. *New Haven*, 48 Conn. App. 385, 389–90, 710 A.2d 798 (1998). Further, the plaintiffs' takings claims would not be disposed of because they failed to appeal the Zoning Board's decision to the Superior Court because our Supreme Court has held that "a plaintiff is not required

to appeal a decision of the zoning board of appeals denying a variance in order to bring an inverse condemnation claim, and . . . the plaintiff is entitled to de novo review of the factual issues underlying its inverse condemnation claim regardless of the prior determinations of those issues by the zoning board of appeals." *Miller* v. *Westport*, 268 Conn. 207, 217–18, 842 A.2d 558 (2004). While the availability of an appeal under § 8-8 may have some bearing upon some of the counts individually, it is not a basis for rejecting the plaintiffs' operative complaint as a whole.

B

Count One of the Plaintiffs' Operative Complaint: Substantive Due Process Violations Under 42 U.S.C. § 1983

The Connecticut Supreme Court has adopted the "clear entitlement test" as the method to determine whether a plaintiff may make due process claims in a land regulation case. (Internal quotation marks omitted.) *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 321, 627 A.2d 909 (1993). "The clear entitlement test mandates the possession of a constitutionally protected property interest as a threshold requirement for a successful substantive or procedural federal due process claim. . . . If a claimant does not establish a constitutionally protected interest, the due process analysis ceases because no process is constitutionally due for the deprivation of an interest that is not of constitutional magnitude. If, however, a due process claimant does establish a constitutionally protected interest, he or she may then seek to establish other required elements of the due process claim, such as reliance on inappropriate procedures or arbitrary or oppressive conduct. . . . The clear entitlement test asks whether there is a certainty or a very strong likelihood that the application in question would have been

granted, but for the wrongful conduct of the local officials. . . . A very strong likelihood means not simply a high probability of approval, but rather a virtual assurance of approval because any discretion is narrowly circumscribed. . . .

"Application of the [clear entitlement] test must focus primarily on the degree of discretion enjoyed by the issuing authority, not on the estimated probability that the authority will act favorably in a particular case." (Citations omitted; internal quotation marks omitted.) Id., 321–23.

"[T]he question of whether [a land use] applicant has a property interest is normally a matter of law." (Internal quotation marks omitted.) Id., 321 n.13. Therefore, summary judgment evaluation as to the plaintiffs' substantive due process violations is appropriate. For reasons set forth below, the court is of the opinion that the plaintiffs cannot show that they have an interest that meets the requirements of the "clear entitlement" test.

The plaintiffs focus their arguments in opposition to summary judgment entirely on portions of the Old Lyme town ordinance, which allows for the regulation of parking lots by the First Selectman. Section 161-10 of the Old Lyme town ordinances provides that "[n]o person or organization shall operate a parking area on private property in the Town of Old Lyme without receiving a permit issued by the First Selectman or his designee. Each permit shall terminate on the 31st day of December of each year, unless earlier terminated under § 161-12 of this article, as amended. The permit shall be available for inspection at all times. This article regulates existing parking lots and this § 161-10 shall not be construed to authorize the establishment of any new parking area which does not conform to the applicable provisions of the Old Lyme Zoning Regulations."

The town ordinances also provide a list of features that are required for a parking lot to be granted a permit, including the capacity of the lot, the size of the parking spaces, the demarcation of the spaces and other requirements. Id. The plaintiffs argue that because they are in compliance with these physical requirements, they are entitled to a permit to operate a parking lot.

While the plaintiffs' argument that their lot meets physical permit requirements of the ordinance is well taken for the purposes of this motion, their argument founders because it ignores the last sentence of the ordinance, which provides: "This article regulates *existing* parking lots *and this § 161-10 shall not be construed to authorize the establishment of any new parking area* which does not conform to the applicable provisions of the Old Lyme Zoning Regulations." (Emphasis added.) Old Lyme Town Ordinances § 161-10.

The plaintiffs do not claim that they are an existing parking lot but merely that their land is surrounded by parking lots operated by the Town and others and physically could meet the requirements for the establishment of a parking lot. The last sentence of the ordinance requires a deferral to the Zoning Regulations to determine whether a public parking lot is a permitted use in the R-10 zone. When the court refers to the Zoning Regulations it cannot find any language that would support the plaintiffs' claim that they are entitled to use their property to establish a new parking lot. The court notes that parcels which were used for public parking lots prior to the adoption of the Old Lyme Zoning Regulations in 1992 would be protected preexisting nonconforming uses.[1]

---

[1] General Statutes § 8-2 (a) provides in relevant part: "Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Such regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use. . . ."

The Old Lyme zoning regulations specifically enumerate certain land uses that are prohibited. Section 6.1 of the Old Lyme Zoning Regulations provides: "It is expressly understood that any use not listed and designated as permitted in the specified District in Section 5 of these Regulations is prohibited in such District. Nevertheless, due to their uniquely objectionable characteristics, certain uses are identified in this Section 6 for specific prohibition in any zone, as principal or accessory uses, and no use category set forth in Section 5 of these Regulations shall be deemed to include any use set forth herein. To assist in the interpretation of permitted uses, the following uses, the list of which is not intended to be exhaustive, are specifically prohibited . . . ." Contained in the list of prohibited uses are privately owned public parking lots. Section 6.1.9 of the Old Lyme zoning regulations provides: "Anything in these Regulations to the contrary notwithstanding, no lot, or portion thereof, shall be used as a Public Parking Lot, except for Public Parking Lots under the management, supervision, and control of the Town of Old Lyme. The inclusion of this prohibition is for clarity only and does not amend the pre-existing prohibition against Public Parking Lots which arose by virtue of Section 2.1 of these Regulations. See Section 3.2, Definition of 'Public Parking Lot.' " Id.

The Old Lyme Zoning Regulations clearly prohibit the creation of new, privately owned public parking lots.

Additionally, the town ordinance regarding the management of existing public parking lots cannot be said to bestow any independent right to use land as a public parking lot if the lot conforms to the technical requirements of lot operation. While § 161-10 requires that all parking lots must operate according to certain standards, the ordinance also expressly states that it does not authorize the establishment of new parking lots that fail to conform with the existing zoning regulations.

The plaintiffs further argue that the Old Lyme Zoning Regulations' prohibition on public parking lots cannot be reconciled with the town ordinance regulating the operation of parking lots. Further, they argue that the ordinances' permitting process for parking lots invalidates the zoning regulation that prohibits parking lots. The court disagrees. The town ordinance states that it only serves to regulate the operation of *existing* parking lots and in no way allows for the establishment of *new* parking lots, regardless of whether they would comply with the permitting requirements. The zoning regulation and the town ordinance, when read together, show that to lawfully operate a public parking lot in Old Lyme, one must first comply with the zoning regulations and then seek and obtain a permit from the First Selectman stating that the lot complies with the technical requirements listed in the town ordinance. It would be possible for a lot owner with an existing parking lot to comply with the zoning regulations, yet fail the permit requirements due to failure to conform with the ordinance. However, under this structure, in Old Lyme, a person could not operate a parking lot that complied with the ordinance requirements but failed to comport with the zoning regulations. These two municipal regulations do not conflict; rather, they merely require prospective parking lot operators to go through two approval processes before opening for business.

Because of this two tiered system, the fact that the plaintiffs' lot allegedly complies with all of the parking area requirements of the town permitting ordinance does not mean that they are clearly entitled to the parking lot permit in the constitutional sense. As our Supreme Court in *Kelley Property Development, Inc.*, explained, the "clear entitlement test" requires that property owners bringing a due process challenge show not only that they were likely to have their proposed land use approved, but that they were virtually assured

approval and, but for the improper actions of the state officials, they would have been granted approval. See *Kelley Property Development, Inc.* v. *Lebanon, supra,* 226 Conn. 321–22. In the present case, even if the First Selectman were to determine that the plaintiffs' lot complied exactly with all of the requirements of § 161-11, he was not required to issue the permit because the proposed use was strictly prohibited by the Old Lyme Zoning Regulations, and § 161-10 clearly states that the permitting process does not apply to new parking lots that do not conform with zoning regulations. Because the plaintiffs' proposed land use is barred by the zoning regulations, they cannot state that they have a clear entitlement to a parking permit. As such, their property interest is not constitutionally protected, and the court's due process analysis must end. Therefore, the defendants' motion for summary judgment as to count one of the plaintiffs' operative complaint is granted.

C

Count Two of the Plaintiffs' Operative Complaint: Procedural Due Process Violations Under 42 U.S.C. § 1983

The plaintiffs' claims of procedural due process must fail for the same reasons as their claims of violations of their substantive due process rights. In *Kelley Property Development, Inc.,* our court stated that "[a]lthough both the Second Circuit and this court have applied the 'clear entitlement' test primarily in cases involving substantive due process claims . . . that test applies with equal force in procedural due process cases. Indeed, the United States Supreme Court case in which the 'clear entitlement' test originated is *Board of Regents* v. *Roth,* 408 U.S. 564, 576–78, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), a procedural due process case. Accordingly, we apply the 'clear entitlement' test to . . . federal substantive and procedural due process claims." (Citations omitted.) *Kelley Property Development, Inc.* v. *Lebanon, supra,* 226 Conn. 322 n.14. As

explained above, because the plaintiffs' proposed land use was barred by the Old Lyme Zoning Regulations, they did not have a clear entitlement to a parking lot permit that would warrant constitutional protection. Accordingly, the defendants' motion for summary judgment as to count two of the plaintiffs' operative complaint is granted.

### D

Count Three of the Plaintiffs' Operative Complaint: Equal Protection Violations Under 42 U.S.C. § 1983

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court

under Practice Book § [17-45]." (Internal quotation marks omitted.) *Zielinski* v. *Kotsoris*, 279 Conn. 312, 318–19, 901 A.2d 1207 (2006).

The defendants in the present case have asserted that they are entitled to summary judgment with regard to the plaintiffs' equal protection claims because there is no dispute of material facts, and the plaintiffs cannot demonstrate that they are prima facie identical to the other, permitted, parking lot owners, who all operated parking lots prior to the enactment prohibition on privately owned public parking lots. In support of this argument, the defendants have submitted the affidavit of Timothy Griswold, the First Selectman of Old Lyme, who states that all of the nine other property owners operating public parking lots had operated their lots prior to the enactment of the zoning regulation prohibiting such lots. The plaintiffs, in their opposition to summary judgment, do not contest the assertion that the other nine lot owners had been operating their own public parking lots prior to the enactment of the zoning regulation; nor do they offer any evidence that positively indicates that these properties were not used as public parking lots prior to the enactment of the zoning prohibition.[2]

"[E]qual protection does not just mean treating identically situated persons identically. . . . [T]he requirement imposed upon [p]laintiffs claiming an equal

---

[2] The plaintiffs have submitted deposition testimony of Timothy Griswold that indicates some uncertainty as to exactly when the other lot owners commenced operation of their public parking lot businesses. However, the responses in this deposition testimony only reveal a general uncertainty as to when, exactly, and under what circumstances the lots came into existence and do not address the core issue of whether the lots were in existence prior to the enactment of the zoning regulations. The plaintiffs further aver that the other lot owners do not operate their lots in conformity to the requirements of the Town ordinance. Even if the other lot owners were not operating in compliance with the ordinance, that fact would not entitle the plaintiffs to their permit.

protection violation [is that they] identify and relate specific instances where persons situated similarly *in all relevant aspects* were treated differently . . . . Entities are situated similarly in all relevant aspects if a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the relevant aspects are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Kelo* v. *New London*, 268 Conn. 1, 103 n.98, 843 A.2d 500 (2004), aff'd, 545 U.S. 469, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005).

In the present case, the plaintiffs cannot show that they are similarly situated to the other landowners operating parking lots in Old Lyme. Under its own terms, the ordinance which the plaintiffs claim entitles them to receive a permit to operate a parking lot "regulates existing parking lots and . . . shall not be construed to authorize the establishment of any new parking area which does not conform to the applicable provisions of the Old Lyme Zoning Regulations." Old Lyme Town Ordinances § 161-10. As such, the owners of parking lots that had been in existence and operating prior to the passage of the zoning regulation and town permitting ordinance are not similarly situated to the plaintiffs, who have never operated a public parking lot and seek to establish a new parking lot in Old Lyme.[3] Because the plaintiffs are not similarly situated in all

---

[3] Many cases have discussed the conflict between the zoning goal of reducing and eliminating nonconforming uses and the protection afforded those nonconforming uses under General Statutes § 8-2. See, e.g., *Helbig* v. *Zoning Commission*, 185 Conn. 294, 440 A.2d 940 (1981). Preexisting nonconforming uses and proposed new uses are treated differently within the context of zoning.

relevant aspects to the parking lot owners who have been granted permits, their equal protection claims must fail. The defendants' motion for summary judgment with regard to count three of the plaintiffs' operative complaint is granted.

E

Count Four of the Plaintiffs' Operative Complaint: Takings Under the Fifth Amendment to the United States Constitution

In *Tamm* v. *Burns*, 222 Conn. 280, 282 n.1, 610 A.2d 590 (1992), our Supreme Court stated that while a violation of the takings clause of the Fifth Amendment to the United States Constitution may give rise to a due process claim under the Fourteenth Amendment to the United States Constitution, it is not actionable, in its own right, against nonfederal entities. There, the court stated: "The fifth amendment, however, serves as a limitation only on the powers of the United States government and affords no ground for relief against the state of Connecticut. . . . The Fourteenth Amendment to the United States Constitution provides for the protection of the federal courts to individuals whose property is threatened with condemnation by a state without compensation. Such a deprivation would lack the process of law." (Citations omitted; internal quotation marks omitted.) Id. Accordingly, the plaintiffs' fifth amendment takings claim cannot be prosecuted against the defendants, who are not federal entities. The plaintiffs have, however, raised both procedural and substantive due process claims that would be available to them under the Fourteenth Amendment. As discussed above, both of those due process claims are subject to summary judgment because the plaintiffs do not possess an interest in obtaining a parking lot permit that passes the "clear entitlement" test adopted by our Supreme

Court in *Kelley Property Development, Inc.* v. *Lebanon,* supra, 226 Conn. 314.

Because the Fifth Amendment to the United States Constitution does not apply, on its own, to the defendants in this case, and we have already addressed the implication of a takings claim on the plaintiffs' due process rights, the defendants' motion for summary judgment as to count four of the plaintiffs' operative complaint is granted.

F

Count Five of the Plaintiffs' Operative Complaint: Violations of the Plaintiffs' Due Process Rights Under the Connecticut Constitution

The plaintiffs argue that their due process rights have been violated and that under article first, §§ 8 and 10, of the Connecticut Constitution, they are entitled to bring an action seeking damages. They further argue that the fact that our courts have not yet recognized a constitutional cause of action arising from a particular injury does not mean that there is no cause of action available; rather, the plaintiffs argue that our courts adjudicate the propriety of constitutional damages claims on a case-by-case basis. However, assuming that the courts do indeed measure constitutional claims under article first, §§ 8 and 10, on an individual basis, as to the present cause of action, the courts have already heard and rejected constitutional damages claims raised by landowners who are denied use permits by town zoning authorities.

Our Supreme Court, in *Kelley Property Development, Inc.* v. *Lebanon,* supra, 226 Conn. 314, examined the propriety of permitting frustrated landowners to bring suits under the Connecticut Constitution, as opposed to requiring them to proceed through the administrative appeals process provided by the legislature. In *Kelley*

*Property Development, Inc.*, as in the present case, a property owner sought damages for injuries resulting from the town's denial of the property owner's land use application. See id., 316. There, as here, the plaintiff landowner brought claims under 42 U.S.C. § 1983 as well as substantive and procedural due process claims under the Connecticut constitution. Id.

In rejecting the plaintiff's claim under article first, § 10, of the Connecticut constitution, our Supreme Court stated: "[W]e have consistently interpreted article first, § 10, to prohibit the legislature from abolishing a right that existed at common law prior to 1818. [A]ll rights derived by statute and the common law extant at the time of the adoption of article first, § 10, are incorporated in that provision by virtue of being established by law as rights the breach of which precipitates a recognized injury, thus being exalted beyond the status of common-law or statutory rights of the type created subsequent to the adoption of that provision. . . . Even if a particular right did exist at common law, however, the legislature is entitled to abolish or modify, consistently with article first § 10, the right as long as it also enacts a reasonable alternative to the enforcement of the right." (Citations omitted; internal quotation marks omitted.) Id., 331. After examining relevant case law, the court rejected the plaintiff's common-law based constitutional claims, stating, "we decline to read these cases as establishing a common law precedent for the existence of a constitutional claim for damages for any and all alleged misconduct by state or local governmental officers. It is more plausible to understand these cases as precursors of the modern principle that violation of statutory rights may allow an injured person to assert a private cause of action or a traditional tort action for damages. . . . We conclude, therefore, that [the plaintiff] has failed to establish that, in the circumstances of this case, a damages action for the violation

of a quasi-constitutional right existed at common law in Connecticut prior to 1818 and thereby became incorporated into the state constitution by virtue of article first, § 10." (Citations omitted.) Id., 333. In the present case, the plaintiffs have failed to demonstrate why their constitutional claims should be treated differently from the claims raised in *Kelley Property Development, Inc.* In both cases, a landowner sought private damages from town zoning officials relating to the denial of a permit. As to this claim, our Supreme Court's ruling in *Kelley Property Development, Inc.*, is clear and binding authority. Accordingly, the court finds that under the circumstances of this case, the plaintiff has failed to establish that the defendants violated a quasi-constitutional right that existed at common law and was incorporated into the state constitution via article first of the Connecticut Constitution.

In addition, rejecting the common-law rights argument, in *Kelley Property Development, Inc.*, our Supreme Court also rejected the plaintiff's claim that the court should infer the existence of a cause of action under the state constitution's due process clause under the United States Supreme Court's decision in *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). In *Bivens*, the court permitted a plaintiff to seek private damages for violations of his fourth amendment rights. Id., 395–97. However, our Supreme Court has recognized that several jurisdictions have limited whether courts should allow state *Bivens* actions in certain circumstances. *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 338–39. In the context of land use regulations, our Supreme Court has declined to recognize a *Bivens* type action for plaintiffs who have been denied a land use permit. Id., 339–40. In rejecting the *Kelley Property Development, Inc.*, plaintiff's claim for damages arising out of due process violations, our Supreme Court stated that "as a general

matter, [the court] should not construe our state constitution to provide a basis for the recognition of a private damages action for injuries for which the legislature has provided a reasonably adequate statutory remedy. This conclusion accords with the constitutional principle of separation of powers and its requirement for judicial deference to legislative resolution of conflicting considerations of public policy. . . .

"We note that the legislature, by enacting General Statutes § 8-8, has provided [the plaintiff] an avenue for administrative relief from the wrongful and allegedly unconstitutional conduct of the defendants. It is constitutionally significant that judicial review of the administrative decision may be available. . . . The existence of this remedy weighs heavily against judicial creation of a state *Bivens* action. Moreover, even if such administrative relief were deemed to be inadequate, a proposition to which we do not subscribe, [the plaintiff] might have pursued other actions to protect his interests. He might, for example, have brought an action for intentional interference with business expectancy, or for equitable relief, such as an action for an injunction against the defendants' allegedly wrongful conduct.

"As a matter of policy, the existing remedies, although they may not afford as complete relief as a state *Bivens* action would provide, are particularly appropriate in light of the fact that the [Town] officials whose conduct allegedly violated [the plaintiff's] state constitutional rights are not professionals but are laypersons with little or no technical expertise. . . . To expose the commission members, as well as [the town] and the commission, to expansive liability in damages for an erroneous interpretation of the parameters of the members' discretion would be likely, for at least two reasons, to have adverse consequences on the parties, local zoning processes and the courts.

"First, although potential defendants could avoid liability by not engaging in unconstitutional conduct, they

might not be able to predict accurately what conduct would be found to violate the state constitution. The threat of liability would be apt to entail costs of its own, insofar as that threat may have a chilling effect on the zeal with which zoning commissions and their members undertake their responsibilities.

"Second, the availability of a state *Bivens* action, with its potential for significant monetary awards, would encourage its pursuit by any disappointed zoning applicant whenever a zoning agency denies the sought after permit or application. The cost to towns, zoning commissions and their members of defending against a myriad of such claims, whether or not meritorious, would be great, and the courts also would incur costs in light of the increased caseload.

"Accordingly, we conclude that this case does not require the recognition of a state *Bivens* action because [the plaintiff's] existing statutory remedy strikes a proper balance. Section 8-8, supplemented by other potentially available avenues of relief, affords disappointed zoning applicants a reasonable remedy that does not impose unwarranted burdens on the towns, zoning commissions, zoning officials or the courts." (Citations omitted.) Id., 339–43.

The factual scenario before our Supreme Court in *Kelley Property Development, Inc.*, is sufficiently similar to the present case to guide the court in denying the plaintiffs' state due process claims. In *Kelley Property Development, Inc.*, the court found that there was not an existing common-law right to land use permit approval that was incorporated into the constitution via article first, § 10. Further, the court in *Kelley Property Development, Inc.*, also held that because of the readily available statutory remedies provided by § 8-8, the creation of a state *Bivens* action for disappointed zoning applicants is not warranted. In the present case, the plaintiffs do not enjoy a right to permit approval and

have the same remedies available to them as were present in the *Kelley Property Development, Inc.*, case. Accordingly, summary judgment as to count five of the plaintiffs' operative complaint is granted.

G

Count Six of the Plaintiffs' Operative Complaint: Violations of the Plaintiffs' Equal Protection Rights Under the Connecticut Constitution

Our Supreme Court has stated that "[t]he equal protection and due process clauses of the United States and Connecticut constitutions have the same meanings and the same limits." *Brunswick Corp.* v. *Liquor Control Commission*, 184 Conn. 75, 82 n.4, 440 A.2d 792 (1981); see also *Zapata* v. *Burns*, 207 Conn. 496, 504, 542 A.2d 700 (1988); *Keogh* v. *Bridgeport*, 187 Conn. 53, 59–60, 444 A.2d 225 (1982); *Caldor's, Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 314, 417 A.2d 343 (1979).

"[E]qual protection does not just mean treating identically situated persons identically. . . . [T]he requirement imposed upon [p]laintiffs claiming an equal protection violation [is that they] identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently . . . ." (Internal quotation marks omitted.) *Kelo* v. *New London*, supra, 268 Conn. 103 n.98. In the present case, under either the federal or state constitutional equal protection guarantees, to succeed, the plaintiffs must demonstrate that they are similarly situated, in all relevant aspects, to the parking lot owners who have been granted permits and operate public parking lots in Old Lyme. As discussed above, the plaintiffs cannot show that they are similarly situated to the other lot owners because they have not rebutted the defendants' evidence that the use of those properties as parking lots began prior to the enactment of the zoning prohibition on public parking lots while the plaintiffs seek to open

a new parking lot, without first obtaining a zoning variance allowing them to do so. Because there is no genuine material dispute with regard to the fact that the plaintiffs seek to open a new parking lot and that the other lots already existed when they were granted their permits, the plaintiffs cannot meet their burden of showing that they are similarly situated to the other lot owners in all relevant aspects. Accordingly, summary judgment as to the plaintiffs' sixth count is granted.

H

Count Seven of the Plaintiffs' Operative Complaint: Unconstitutional Taking of the Plaintiffs' Property by Old Lyme Through Inverse Condemnation

Our Supreme Court has recognized that the actions of a zoning body may constitute an unconstitutional taking through inverse condemnation. See *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 62–63, 808 A.2d 1107 (2002). "[A] regulatory taking—also known as inverse condemnation—occurs when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding and, therefore, require the government to pay compensation to the property owner." (Internal quotation marks omitted.) Id., 47 n.2. "[A] plaintiff in an inverse condemnation action seeks to demonstrate that the action of a zoning board of appeals resulted in a taking that, in turn, gives rise to a constitutional right to compensation. . . . A plaintiff who brings an inverse condemnation action may vindicate that right in the Superior Court, where the court hears evidence, finds facts and determines whether the action of a zoning board amounts to a practical confiscation. . . . If so, the court also determines what compensation is due." (Citations omitted.) Id., 63. "The determination of whether

a particular property has been taken by inverse condemnation must be made on the specific facts of the individual case." *Melillo* v. *New Haven*, 249 Conn. 138, 148–49, 732 A.2d 133 (1999). "The word taken in article first, § 11 of our state constitution means the exclusion of the owner from his private use and possession, and the assumption of the use and possession for the public purpose by the authority exercising the right of eminent domain. . . . Although property may be taken without any actual appropriation or physical intrusion . . . there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose . . . as where the economic utilization of the land is, for all practical purposes, destroyed. . . . A constitutional taking occurs when there is a substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed." (Citations omitted; internal quotation marks omitted.) *Tamm* v. *Burns*, supra, 222 Conn. 284.

In the present case, there exist issues of material fact as to what uses the plaintiffs may have for their land other than using it as a for profit public parking lot. Neither the plaintiffs nor the defendants have addressed what uses the land may have under the current zoning scheme. It is not disputed that until recently, the plaintiffs had only been using their land as a private parking lot and that they could continue to use their land for that purpose. However, the only two uses that have been briefed or discussed by either party are private use parking lot and public use parking lot. Because the court cannot say definitively what the facts are with regard to the zoning regulations' economic impact on the plaintiffs' land, summary judgment as to this count of the plaintiffs' operative complaint is inappropriate. Summary judgment as to count seven of the plaintiffs' operative complaint is denied.

I

## Count Eight of the Plaintiffs' Operative Complaint: Plaintiffs' Petition for a Writ of Mandamus

A writ of mandamus is "an extraordinary remedy, available in limited circumstances for limited purposes. . . . [The court's discretion] will be exercised in favor of issuing the writ only where the plaintiff has a clear legal right to have done that which he seeks. . . . The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." (Internal quotation marks omitted.) *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, 278 Conn. 408, 412, 898 A.2d 157 (2006).

The facts of the present case indicate that a writ of mandamus is not appropriate because the plaintiffs do not meet the second and third criteria established by our Supreme Court. Under the Old Lyme zoning scheme currently in place, the plaintiffs do not have a clear legal right to be awarded a parking lot permit. In order to lawfully establish a new public parking lot in Old Lyme, one must first get approval from the Zoning Board in the form of a use variance. After obtaining the variance, one must then also comply with the requirements of the ordinance with regard to the actual operation of the parking lot. Only through compliance with both of the regulatory mandates may one obtain a clear legal right to open a new public parking lot in Old Lyme. Because the plaintiffs lack the appropriate zoning approval, they do not have a legal right to operate a public parking lot.

Further, the plaintiffs also are not without a specific adequate remedy at law. Section 8-8 allows aggrieved

zoning applicants to appeal the decision of the zoning board to the Superior Court. Our Supreme Court has stated that "[t]he failure to exhaust an available administrative remedy is . . . a proper ground for denying mandamus." *Juliano* v. *Farrell,* 196 Conn. 283, 286, 492 A.2d 187 (1985). The plaintiffs requested a variance from the zoning board in 2004, and, after a full hearing, the request was denied. The plaintiffs have not appealed that decision, nor have they sought another variance. Instead, they filed repeated requests for a parking lot operations permit and then brought suit asking the court to order that they be granted a parking lot permit despite the fact that their zoning variance was denied. Their cause is precisely the type of action that a zoning appeal under § 8-8 is designed to further. As such, they are not without adequate remedies other than a writ of mandamus.

Because the plaintiffs cannot show that they have a clear legal right to establish a new parking lot, and have adequate remedies available to them, they are not entitled to a writ of mandamus. As such, the motion for summary judgment is granted with regard to count eight of the plaintiffs' operative complaint.

J

Count Nine of the Plaintiffs' Operative Complaint: Declaratory Relief

Our Supreme Court has stated that "[d]eclaratory judgment proceedings are appropriate for determining rights in connection with the regulations of an administrative agency. *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 104, 291 A.2d 721 [1971]; *Sage Allen Co.* v. *Wheeler,* 119 Conn. 667, 673, 179 A. 195 [1935]; *Sigal* v. *Wise,* 114 Conn. 297, 301, 158 A. 891 [1932]. In *Hartford Electric Light Co.* v. *Water Resources Commission,* [supra, 89, our Supreme Court] commented on the difference between questions

appropriate for resolution by declaratory judgment and those more appropriately dealt with by means of administrative appeal. [The court] there observed that declaratory judgment proceedings are appropriate for determining jurisdictional issues or questions concerning the validity of the regulations of an administrative agency, while questions concerning the correctness of an agency's decision in a particular case or of the sufficiency of the evidence can properly be resolved *only by appeal.*" (Emphasis added.) *Aaron* v. *Conservation Commission,* 178 Conn. 173, 177–78, 422 A.2d 290 (1979).

In count nine of their operative complaint, the plaintiffs seek declaratory relief, stating that they are entitled to a permit to operate their property as a parking lot and that "[t]he ordinance *as applied* violates the equal protection rights of the plaintiffs." (Emphasis added.) On the face of their operative complaint, the plaintiffs' request for declaratory relief focuses on the Old Lyme regulations as they relate to their property specifically, and not to the constitutional validity of the regulations or the jurisdiction of the Zoning Board or the First Selectman. The plaintiff does not allege that the Zoning Board may not regulate the development of new parking lots in Old Lyme or that the First Selectman does not have the authority to issue parking lot permits; rather, they challenge whether the Old Lyme parking lot regulation scheme, as applied to their parcel of land, improperly interferes with their rights. As such, under the guidance of our Supreme Court in *Aaron* v. *Conservation Commission,* supra, 178 Conn. 177–78, the court finds that the relief sought by the plaintiffs in count nine of their operative complaint is better suited for a zoning appeal than an action for declaratory relief. Summary judgment with regard to count nine of the plaintiffs' operative complaint is granted.

## III

### SOVEREIGN IMMUNITY OF OLD LYME[4]

Recently, our Appellate Court stated that "[t]he doctrine of sovereign immunity is not available . . . as a defense to claims for just compensation arising under article first, § 11, of the Connecticut constitution. . . . To survive a motion to dismiss on the ground of sovereign immunity, [however] a complaint must allege sufficient facts to support a finding of a taking of land in a constitutional sense." (Internal quotation marks omitted.) *Ertel* v. *Rocque*, 108 Conn. App. 48, 53, 946 A.2d 1251, cert. denied, 289 Conn. 926, 958 A.2d 158 (2008). As discussed above, the plaintiffs have alleged that they have been denied a permit to operate their property as a public lot, leaving its only suitable use as an undeveloped parcel of land where the plaintiffs can store their own vehicles. The defendants have not alleged or provided any evidence showing that the lot could be used as anything but a parking facility, either private or public, and merely argue that because the plaintiffs had, until 2004, only sought to use their land as a private parking lot, their permit denial does not deprive them of all reasonable use of their land. Because of the allegedly limited use of that parcel of land, the town's refusal to permit the plaintiffs to use their land as a for profit parking lot could amount to a total deprivation of the parcel's economic value. As such the plaintiffs have

---

[4] Only count seven of the plaintiffs' operative complaint remains. In that count, the plaintiffs allege that Old Lyme's denial of the plaintiffs' request to use their property as a public parking lot constituted an unconstitutional taking through inverse condemnation. Importantly, the plaintiffs, in count seven of their operative complaint, levy their takings claim against Old Lyme alone, and do not include Timothy Griswold, as they had done with the other counts of their operative complaint. Because count seven is the only remaining portion of the operative complaint, and that count does not involve Timothy Griswold, the court will limit the defendants' immunity claims accordingly. Specifically, the court will only address the immunity defenses as they relate to the town of Old Lyme and the inverse condemnation claim.

alleged facts which would support a finding of a taking in a constitutional sense, and sovereign immunity is not available as a defense.

Further, the defendants have alleged that they are shielded by the statutory immunity provided by § 52-557n. With respect to the plaintiffs' constitutional takings claim, however, that statute offers no protection to Old Lyme. While § 52-557n (b) (7) shields municipalities from liability for damages arising out of the denial of a permit, license or similar permission, the plaintiffs' inverse condemnation claim charges that the town's actions have violated the plaintiffs' constitutional rights and is far broader than a mere permit dispute. The plaintiffs do more than merely assert that they have been damaged by the permit denial. They, in effect, argue that by forbidding them from operating their land as a public parking lot, the town has prevented them from using their land in any economically beneficial way and taken their property via inverse condemnation. Section 52-557n does not offer municipal immunity for inverse condemnation claims such as the one found in count nine of the plaintiffs' operative complaint. As such, neither statutory nor sovereign immunity applies to Old Lyme in this case.

## IV

## CONCLUSION

The defendants' motion for summary judgment is granted as to counts one, two, three, four, five, six, eight and nine of the plaintiffs' operative complaint. Summary judgment is denied as to count seven of the plaintiffs' operative complaint. All counts that relate to Timothy Griswold have been summarily decided, leaving only the inverse condemnation claim against Old Lyme.